UNITED STATES of America, Plaintiff,

v.

The BONANNO ORGANIZED CRIME FAMILY OF La COSA NOSTRA, Joseph Bonanno, Philip Rastelli, Joseph Massino, Anthony Spero, Louis Attanasio, Alfred Embarrato, Gabriel Infanti, Frank Lino, Nicholas Marangello, Anthony Riella, Michael Sabella, Anthony Graziano, Benjamin Ruggiero, Ignatius Bracco, James Vincent Bracco, William Rodini, Vito Gentile, International Brotherhood of Teamsters, Local 814 Van Drivers, Packers and Furniture Handlers, Warehousemen's and Appliance Home Delivery Union, Executive Board of International Brotherhood of Teamsters Local 814 Van Drivers, Packers and Furniture Handlers, Warehousemen's and Appliance Home Delivery Union, International Brotherhood of Teamsters Local 814 Van Drivers, Packers, and Furniture Handlers, Warehousemen's and Appliance Home Delivery Union Welfare Fund, International Brotherhood of Teamsters Local 814 Van Drivers, Packers and Furniture Handlers, Warehousemen's and Appliance Home Delivery Union Pension Fund, International Brotherhood of Teamsters Local 814 Van Drivers, Packers, and Furniture Handlers, Warehousemen's and Appliance Home Delivery Union Annuity Fund, Defendants.

UNITED STATES of America, Plaintiff,

v.

CERTAIN BUILDINGS AND PROPERTIES LOCATED AT 58–23 58TH ROAD, MASPETH, NEW YORK, 405 Myrtle Avenue, Brooklyn, New York, 78–80 East 4th Street, New York, New York, Defendants.

No. CV–87–2974.

United States District Court,
E.D. New York.

March 24, 1988.

Peter R. Ginsberg, Thomas A. Carr, Asst. U.S. Attys., for U.S.

Judd Burstein, P.C., New York City, for Anthony Spero.

Joseph R. Benfante, New York City, for Gabriel Infanti.

Gerald B. Lefcourt, P.C., New York City, for Anthony Riela.

Gustave H. Newman, P.C., New York City, for Michael Sabella.

Benjamin Ruggiero, pro se.

Robert M. Simels, New York City, for Nicholas Marangello and William Rodini.

Richard Ware Levitt, New York City, for Joseph Bonanno.

Michael J. Coyle, Stanley A. Teilter, P.C., New York City, for Philip Rastelli.

Ronald P. Fischetti, Fischetti & Pomerantz, New York City, for Joseph Massino.

Wallace Musoff, New York City, for Louis Attanasio.

John J. Pollok, Todtman, Hoffman, Epstein, Young, Goldstein, Tunick & Pollok, P.C., New York City, for Alfred Embarrato, Frank Lino and Anthony Graziano.

Joel A. Pisano, Schwartz, Pisano, Simon & Edelstein, Livingston, N.J., for Belleville Motor Lodge, Inc.

Sharon A. Flood, New York City, for James Vincent Bracco.

## MEMORANDUM AND ORDER

GLASSER, District Judge:

The government filed this civil action under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961–1968 (1982 and Supp. IV 1986),[1] on August 25, 1987, and filed an Amended Verified Complaint on October 5, 1987. The Amended Complaint names as defendants "the Bonanno Organized Crime Family of La Cosa Nostra" and twenty-two additional individuals and entities. The Amended Complaint alleges that the defendants have engaged in at least 199 acts of racketeering including gambling offenses, narcotics offenses, trafficking in contraband cigarettes, transportation of stolen stock certificates, extortion, usury, labor racketeering, and interference with commerce by threats or violence.

The Amended Complaint alleges that the defendants, through the enumerated acts of racketeering, have participated in the affairs of two enterprises, the Bonanno Organized Crime Family and an enterprise consisting of a union, its executive board, and its employee benefit funds, in violation of 18 U.S.C. § 1962(c) and that the defendants have invested income received from the alleged racketeering acts in eight business enterprises in violation of § 1962(a). In addition, the Amended Complaint alleges that the defendants have conspired, in violation of 18 U.S.C. § 1962(d), to violate 18 U.S.C. § 1962 (a) and (c).

The Amended Complaint seeks a preliminary injunction pursuant to 18 U.S.C. § 1964(a) restraining the defendants from, among other things, engaging in certain racketeering activities, associating with each other "for any business or commercial purpose," participating in the affairs of the union defendants or any other labor organization or employee benefit plan, and transferring property interests in the eight specified businesses. The Amended Com-

plaint also seeks the appointment of a trustee *pendente lite* to oversee the operation of the union defendants and a receiver *pendente lite* to oversee the eight businesses.

The ultimate relief sought by the government includes a permanent injunction prohibiting the defendants from participating in the union defendants or any other labor organization or participating in any moving or storage business, from associating with each other for business or commercial purposes for five years, and from engaging in certain criminal activities. The Amended Complaint also seeks treble monetary damages pursuant to 18 U.S.C. § 1964(c) and divestiture of the defendants' interests in the eight businesses pursuant to 18 U.S.C. § 1964(a). Finally, the government has simultaneously filed a Verified Complaint in Rem seeking forfeiture of three properties pursuant to 18 U.S.C. § 1955.

On October 8, 1987, the government entered into a Consent Judgment with defendants International Brotherhood of Teamsters Local 814 Van Drivers, Packers and Furniture Handlers, Warehouseman's and Appliance Home Delivery Union ("Local 814"), the Executive Board of Local 814, Local 814 Welfare Fund, Local 814 Pension Fund, and Local 814 Annuity Fund (together "Local 814 Funds"), Ignatius Bracco, and Vito Gentile. The Consent Judgment, approved by court order, provided for the dismissal of the action as against those defendants, the appointment of a trustee, an interim executive board, and an interim board of trustees to oversee the affairs of Local 814 and Local 814 Funds, and for an injunction against Ignatius Bracco's and Vito Gentile's participation in the affairs of any labor organization, other than by simple membership or the receipt of employee benefits, for a period of five years.

The remaining defendants, other than Michael Sabella, have filed motions to dismiss the Amended Complaint pursuant to

---

1. For convenience, the relevant sections of RICO are included as an appendix to this decision.

Rules 12(b)(3), 12(b)(6), and 9(b), Fed.R. Civ.P., for a more definite statement under Rule 12(e), Fed.R.Civ.P., and to strike redundant, immaterial, impertinent, or scandalous matter under Rule 12(f), Fed.R. Civ.P. The defendants attack the Amended Complaint on numerous grounds, asserting that it fails to allege legally sufficient predicate acts for each individual defendant, fails to allege predicate acts within the statute of limitations period, fails to allege a pattern of racketeering or collection of an unlawful debt as required by RICO, fails to plead RICO's requirements with particularity, relies on inapplicable theories of co-conspirator liability, fails to allege that the defendants participated as principals in unlawful activity as required by § 1962(a), and impermissibly names the Bonanno Family as both a defendant and a RICO enterprise.

The defendants challenge the relief sought in the action, claiming that the Amended Complaint seeks forfeiture of property interests which is unauthorized and unconstitutional in a civil RICO action and injunctive relief which would violate the defendants' First Amendment right of association. The defendants argue that forfeiture of real property is not authorized by 18 U.S.C. § 1955 and that the Amended Complaint impermissibly seeks forfeiture of defendant Rodini's interest in an employee benefit fund. The defendants move for a denial, without a hearing, of the government's request for preliminary relief, in particular asserting that the appointment of a receiver *pendente lite* would be unnecessary. The defendants also maintain that the government lacks standing under § 1964(c) to assert claims for money damages and that such claims are insufficient because they are barred by the statute of limitations and *res judicata*.

Defendants Riela and Joseph Bonanno maintain that the Eastern District of New York is an improper venue for the action, that the relief sought in this action would amount to the application of an *ex post facto* law, and that subjecting Riela and

Bonanno, who are elderly and infirm, to this action would be a violation of their due process rights and an abuse of process. Defendant Spero also moves *in limine* for a ruling that the Court will not draw an adverse inference from Spero's invocation of his Fifth Amendment privilege against self-incrimination.[2]

The defendants have to a large extent divided the responsibility for briefing each of these arguments among them and then have joined in each other's motions when applicable. Defendant Sabella had already filed an answer and a motion to dismiss the original Complaint before the government filed its Amended Complaint. Thus Sabella's motion to dismiss the original Complaint and the government's motion to file the Amended Complaint against Sabella are also before the Court. The arguments raised in the motions concerning Sabella are similar to those raised in the other defendants' motions. Unless clearly limited to particular defendants, the following discussion is intended to apply to all defendants whose motions are before the Court.

The RICO statute was part of the Organized Crime Control Act of 1970, Pub.L. 91–452, 84 Stat. 922, which Congress enacted in an effort to eradicate organized crime in the United States. The Statement of Findings and Purpose of the Organized Crime Control Act provides:

The Congress finds that (1) organized crime in the United States is a highly sophisticated, diversified, and widespread activity that annually drains billions of dollars from America's economy by unlawful conduct and the illegal use of force, fraud, and corruption; (2) organized crime derives a major portion of its power through money obtained from such illegal endeavors as syndicated gambling, loan sharking, the theft and fencing of property, the importation and distribution of narcotics and other dangerous drugs, and other forms of social exploitation; (3) this money and power are increasingly used to infiltrate and

---

**2.** The government's application for review of Magistrate Chrein's order precluding the production of Spero's tax returns is discussed in a separate decision.

corrupt legitimate business and labor unions and to subvert and corrupt our democratic processes; (4) organized crime activities in the United States weaken the stability of the Nation's economic system, harm innocent investors and competing organizations, interfere with free competition, seriously burden interstate and foreign commerce, threaten the domestic security, and undermine the general welfare of the Nation and its citizens; and (5) organized crime continues to grow because of defects in the evidence-gathering process of the law inhibiting the development of the legally admissible evidence necessary to bring criminal and other sanctions or remedies to bear on the unlawful activities of those engaged in organized crime and because the sanctions and remedies available to the Government are unnecessarily limited in scope and impact.

It is the purpose of this Act to seek the eradication of organized crime in the United States by strengthening the legal tools in the evidence-gathering process, by establishing new penal prohibitions, and by providing enhanced sanctions and new remedies to deal with the unlawful activities of those engaged in organized crime.

RICO in particular is aimed at four categories of "Prohibited Activities": (a) the use of income derived from a "pattern of racketeering activity or through collection of an unlawful debt" to acquire an interest in, establish, or operate an enterprise engaged in or affecting interstate commerce; (b) the acquisition or maintenance of an interest in an enterprise through a pattern of racketeering activity or collection of an unlawful debt; (c) the conduct of or participation in the conduct of an enterprise through a pattern of racketeering activity or collection of an unlawful debt; and (d) conspiring to violate any of these three provisions. 18 U.S.C. § 1962(a)-(d).

RICO violations may result in the criminal penalties of imprisonment, fines, and forfeiture under 18 U.S.C. § 1963 and may also be the subject of civil actions under § 1964. Section 1964(a) confers equitable powers on the federal district courts to prevent and restrain RICO violations. Section 1964(b) authorizes the Attorney General to institute proceedings under this section. Section 1964(c) authorizes any "person injured in his business or property" because of a RICO violation to sue for treble damages. The government has brought this action under § 1964, seeking both equitable and monetary relief based on the defendants' alleged RICO violations.

It bears noting at the outset that this case does not present the problems of statutory application encountered in recent private civil RICO actions in which courts have expressed a concern that "[i]nstead of being used against mobsters and organized criminals, [RICO] has become a tool for everyday fraud cases...." *Sedima, S.P. L.R. v. Imrex Co.*, 473 U.S. 479, 499, 105 S.Ct. 3275, 3287, 87 L.Ed.2d 346 (1985). This action is directed at the activities of an alleged extensive organized crime enterprise, the Bonanno Organized Crime Family of La Cosa Nostra, through which the defendants allegedly participate in numerous racketeering activities such as gambling, narcotics offenses, loansharking, extortion, and labor racketeering that are the very types of activity at which RICO is aimed. *See* 115 Cong.Rec. 5873-74 (1969) (remarks of Sen. McClellan) (gambling, narcotics, loansharking, and infiltration of legitimate businesses and labor unions described as major areas of activity for organized crime); *accord* Organized Crime Control Hearings before Subcomm. No. 5, Comm. on the Judiciary of the House of Representatives on S. 30 and Related Proposals Relating to the Control of Organized Crime in the United States, 91st Cong., 2d Sess. ("House Hearings") 96 & 152–53 (1970) (statements of Sen. McClellan and Attorney General Mitchell). The "families" of "La Cosa Nostra," the Bonanno Family in particular, and Joseph Bonanno, Philip Rastelli, Michael Sabella, and Nicholas Marangello are mentioned in the descriptions of organized crime contained in RICO's legislative history. 116 Cong.Rec. 18913, 18940 (1970) (remarks of Sen. McClellan); S.Rep. No. 617, 91st Cong., 1st Sess. ("Senate Report") 38, 42 (1969). As

stated by the United States Court of Appeals for the Second Circuit: "Indeed, we have no doubt that the conduct for which [the defendant] was indicted, murder, distributing narcotics, and gambling, all in furtherance of the Bonanno family enterprise, is precisely the type of activity Congress sought to reach through RICO." *United States v. Ruggiero*, 726 F.2d 913, 923 (2d Cir.), *cert. denied sub nom. Rabito v. United States*, 469 U.S. 831, 105 S.Ct. 118, 83 L.Ed.2d 60 (1984).

The fact that this action purports to be aimed at the type of activity and perhaps even one of the very criminal enterprises which Congress had in mind in enacting RICO does not, obviously, establish whether these particular defendants may be held liable in a civil RICO action or whether the government's Amended Complaint sufficiently pleads RICO claims. The parties have briefed several novel and complex issues of RICO interpretation in connection with the defendants' motions to dismiss. The Court will address those motions, first, with respect to the sufficiency of the Amended Complaint's RICO allegations and second, with respect to the appropriateness of the relief requested.

## THE SUFFICIENCY OF THE RICO CLAIMS

The defendants argue that the Amended Complaint fails to state a claim under § 1962(a), (c), and (d) of RICO because the government has not adequately alleged the statutory elements of RICO violations under those sections. Two defendants contend that venue in the Eastern District of New York is not proper and that this action violates their due process rights and the prohibition against *ex post facto* laws. For the reasons stated below, the defendants' arguments are in certain respects meritorious and the action will be dismissed as to the Bonanno Organized Crime Family, Joseph Bonanno, Alfred Embarrato, Frank Lino, Anthony Riela, Michael Sabella and Benjamin Ruggiero, and dismissed in part as to all other defendants.

### The 1962(c) Claims

The Amended Complaint asserts four 1962(c) claims against the defendants. The first claim for relief alleges that the individual defendants are employed by and associated with the Bonanno Family, a RICO enterprise, and have conducted and participated in the Bonanno Family's affairs through a pattern of racketeering activity or collection of an unlawful debt. The second claim for relief alleges that the individual defendants and the union defendants employed by or associated with the Bonanno Family Enterprise conspired and agreed to obtain through collusion and bid-rigging contracts awarded by agencies of the United States government and unlawfully demanded and received payments in connection with such bid-rigging. The third claim for relief alleges that individual defendants, employed by or associated with the Bonanno Family Enterprise, have conducted or participated in the conduct of the Bonanno Family's affairs through a pattern of racketeering activity so as to cause Local 814 to be a captive labor organization. Finally, the twelfth claim for relief alleges that Local 814, Local 814's Executive Board, and the Local 814 Funds constitute an enterprise which is dominated and exploited as a captive labor organization by the Bonanno Family and the individual defendants.

Section 1962(c) provides:

(c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

A violation of § 1962(c) thus requires that a person engage in the "(1) conduct (2) of an enterprise [by which the person is employed or with which he is associated] (3) through a pattern (4) of racketeering activity." *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496, 105 S.Ct. 3275, 3285, 87 L.Ed. 2d 346 (1985) (footnote omitted). As the Supreme Court has noted: "The plaintiff

must, of course, allege each of these elements to state a claim." *Sedima*, 473 U.S. at 496, 105 S.Ct. at 3285. The Court will therefore assess the sufficiency of the first, second, third, and twelfth claims for relief as to each required element of a § 1962(c) claim.

## The RICO Enterprise

■ The first three claims for relief designate the Bonanno Organized Crime Family as the RICO enterprise. The Amended Complaint describes the Bonanno Family as an organized criminal group connected to a nationwide crime organization known as the Mafia or La Cosa Nostra. (Amended Complaint ¶ 4) The Bonanno Family allegedly was founded by defendant Joseph Bonanno in 1924 and over the years has operated and continues to operate illegal activities including "drug trafficking, gambling, bookmaking and numbers games, hijackings, robberies and burglaries, loansharking, extortion and racketeering, and infiltrating, controlling, and corrupting labor unions." (Amended Complaint ¶ 4(d) & (e))

The Amended Complaint alleges that the Bonanno Family operates through groups known as "crews" comprising "made members" or "soldiers" and associates or "connected people." The crews are allegedly headed by "Capos" who in turn report to and share profits with a hierarchy consisting of a Boss, Underboss, and Consigliere. (Amended Complaint ¶ 4(a)) The Amended Complaint alleges that the operation of the Bonanno Family is governed by strict rules requiring that the enterprise's hierarchy approve all illegal activities and share in all profits. (Amended Complaint ¶ 4(b))

The Amended Complaint's description of the Bonanno Family alleges an enterprise under RICO. Section 1961(4) of RICO defines "enterprise" as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." The Amended Complaint alleges that the Bonanno Family consists of "individuals or a group of individuals associated in fact." (Amended Complaint ¶ 45)

The Supreme Court has held that "RICO is equally applicable to a criminal enterprise that has no legitimate dimension or has yet to acquire one" as it is to a legitimate enterprise. *United States v. Turkette*, 452 U.S. 576, 591, 101 S.Ct. 2524, 2533, 69 L.Ed.2d 246 (1981). The courts have recognized that organized crime families, a council of leaders of organized crime families, or divisions of organized crime families may qualify as RICO enterprises. *United States v. Persico*, 832 F.2d 705 (2d Cir.1987) (Colombo Family); *United States v. Langella*, 804 F.2d 185 (2d Cir.1986) (the Commission of La Cosa Nostra); *United States v. Local 560*, 780 F.2d 267 (3d Cir. 1985), *cert. denied*, 476 U.S. 1140, 106 S.Ct. 2247, 90 L.Ed.2d 693 (1986) (Provenzano Group of Genovese Family); *United States v. Santoro*, 647 F.Supp. 153 (E.D.N.Y.1986) (Lucchese Family). The United States Court of Appeals for the Second Circuit has also specifically recognized that the Bonanno Crime Family may be a RICO enterprise. *United States v. Ruggiero*, 726 F.2d 913, 923 (2d Cir.), *cert. denied sub nom. Rabito v. United States*, 469 U.S. 831, 105 S.Ct. 118, 83 L.Ed.2d 60 (1984).

The Bonanno Family Enterprise as described in the Amended Complaint is allegedly characterized by "an ongoing organization, formal or informal." *United States v. Turkette*, 452 U.S. at 583, 101 S.Ct. at 2528; *United States v. Ianniello*, 808 F.2d 184, 191 (2d Cir.1986), *cert. denied*, — U.S. ——, 107 S.Ct. 3230, 97 L.Ed.2d 736 (1987); *see United States v. Persico*, 832 F.2d at 708 (Colombo Family hierarchy consisting of Boss, Underboss, Consiglieri, Capos, crew soldiers, and associates); *United States v. Ruggiero*, 726 F.2d at 916 (Bonanno Family headed by Boss and organized into crews). The Bonanno Family is also alleged to "function as a continuing unit," *United States v. Turkette*, 452 U.S. at 583, 101 S.Ct. at 2528; *United States v. Ianniello*, 808 F.2d at 191; *Furman v. Cirrito*, 828 F.2d 898, 903 (2d Cir.1987), in its conduct of various unlawful activities for profit from 1924 to the present. The alleged Bonanno Family Enterprise thus possesses the qualities of "relatedness and continuity" which the United

States Court of Appeals for the Second Circuit has held must characterize a RICO enterprise. *United States v. Ianniello*, 808 F.2d at 191–92 (discussing *Sedima, S.P.L.R. v. Imrex Co.*, 473 U.S. 479, 496 n. 14, 105 S.Ct. 3275, 3286 n. 14, 87 L.Ed.2d 346 (1985)); *see United States v. Benevento*, 836 F.2d 60, 72 (2d Cir.1987) ("so long as the enterprise is long and elaborate enough to be considered continuing, the enterprise requirement is satisfied"); *cf. Creative Bath Products, Inc. v. Connecticut General Life Insurance Co.*, 837 F.2d 561 (2d Cir.1988); *Albany Insurance Co. v. Esses*, 831 F.2d 41 (2d Cir.1987); *Beck v. Manufacturers Hanover Trust Co.*, 820 F.2d 46 (2d Cir.1987), *cert. denied*, —— U.S. ——, 108 S.Ct. 698, 98 L.Ed.2d 650 (1988) (all finding alleged enterprises with limited short-lived goals insufficient).

■ The twelfth claim for relief alleges that Local 814, its Executive Board, and the Local 814 Funds collectively constitute an "association or union" under § 1961(4)'s definition of enterprise. (Amended Complaint ¶ 99) Although the Amended Complaint does not elaborate on the nature of the "association or union" allegedly formed by the union, executive board, and funds, the defendants have not challenged the designation of enterprise in the twelfth claim for relief. The Court notes, moreover, that the infiltration of labor organizations, with the concomitant "theft from union funds, extortion through the threat of economic pressure, and the profit to be gained from the manipulation of welfare and pension funds," was a specific wrong which Congress sought to address in RICO. Senate Report at 78 (1969); 115 Cong.Rec. 5874 (1969) (remarks of Sen. McClellan). A "captive labor organization" consisting of a

union, union funds, and a severance pay plan was found to be an appropriate RICO enterprise in *United States v. Local 560*, 581 F.Supp. 279, 283 n. 3 (D.N.J.1984), *aff'd*, 780 F.2d 267 (3d Cir.1985), *cert. denied*, 476 U.S. 1140, 106 S.Ct. 2247, 90 L.Ed.2d 693 (1986). While the Local 814 Enterprise should be better defined at a hearing on the merits of this case, the allegations of the twelfth claim for relief are sufficient to put defendants upon notice as to the enterprise involved.

The Amended Complaint alleges that the individual defendants are "employed by or associated with" the Bonanno Organized Crime Family Enterprise as required by § 1962(c). Not only do the first three claims for relief expressly allege such employment or association but each of the individual defendants is described as holding the position of Boss, Underboss, Acting Boss, Consigliere, Capo, soldier, made member, and/or associate of the Bonanno Family. The twelfth claim for relief also alleges that the Bonanno Family and individual defendants have "infiltrated, dominated and exploited" and are "employed by or associated with" the Local 814 Enterprise.[3]

■ Defendant Infanti[4] argues that the Amended Complaint is legally defective because the Bonanno Family cannot be both a RICO enterprise and a defendant or "person" violating RICO under § 1962(c). *Bennett v. United States Trust Co.*, 770 F.2d 308, 315 (2d Cir.1985), *cert. denied*, 474 U.S. 1058, 106 S.Ct. 800, 88 L.Ed.2d 776 (1986); *Cullen v. Margiotta*, 811 F.2d 698, 729 (2d Cir.), *cert. denied sub nom. Nassau County Republican Committee v. Cullen*, —— U.S. ——, 107 S.Ct. 3266, 97 L.Ed.2d 764 (1987). This argument, how-

---

**3.** The twelfth claim for relief specifically names defendants Rastelli, Massino, Marangello, Spero, James Vincent Bracco, and Rodini as being employed by or associated with the Local 814 Enterprise. The Amended Complaint contains no specific allegations indicating that the other defendants are employed by or associated with the Local 814 Enterprise. The Court need not address the sufficiency of the general allegation of employment or association, however, since as discussed below, the Amended Complaint's allegations of a pattern of racketeering as to all individual defendants except Rastelli, Massino,

Marangello, James Vincent Bracco, and Rodini are insufficient to sustain the twelfth claim for relief.

**4.** On January 19, 1988, the government filed a Suggestion of Death pursuant to Rule 25(a)(1), Fed.R.Civ.P., suggesting that Infanti had died. The Court, however, will address the motion filed by Infanti because he is, as of this date, a named defendant and other defendants have joined in Infanti's arguments.

ever, is misplaced because the Bonanno Family is not alleged to fulfill the role of both the enterprise and a "person" violating RICO in any of the Amended Complaint's § 1962(c) claims. In the first three claims for relief, the Bonanno Family is alleged to be the enterprise but only the individual and union defendants are alleged to have conducted or participated in the conduct of the enterprise's affairs. The twelfth claim for relief alleges that the Bonanno Family, along with the individual defendants, infiltrated and exploited the Local 814 Enterprise. The Amended Complaint's § 1962(c) claims are therefore not defective under *Bennett*. *See Lumbard v. Maglia, Inc.*, 621 F.Supp. 1529, 1534 (S.D. N.Y.1985); *United States v. Local 560*, 581 F.Supp. at 329–30 (defendant may be alleged to be enterprise in some claims and "person" violating RICO in others).

■ Moreover, even if the Bonanno Family were alleged to be both the § 1962(c) "enterprise" and "person" in a single claim, that defect in the pleading might be appropriately raised by the defendant Bonanno Organized Crime Family but it would not be grounds for dismissal of the claims against the individual defendants. *See United States v. Computer Sciences Corp.*, 689 F.2d 1181, 1190–91 (4th Cir.1982), *cert. denied*, 459 U.S. 1105, 103 S.Ct. 729, 74 L.Ed.2d 953 (1983); *Morris v. Gilbert*, 649 F.Supp. 1491, 1501 (E.D.N.Y. 1986); *Rodonich v. House Wreckers Union Local 95*, 627 F.Supp. 176, 180–81 (S.D. N.Y.1985) (dismissing claims only as to defendant improperly alleged to be both "person" and "enterprise"). The defendant Bonanno Organized Crime Family has not moved to dismiss, or even appeared in, this action. It is hard to imagine how the Bonanno Family could appear since it is not a legal entity and is alleged to exist only as an "association in fact" enterprise. As such, the Bonanno Family is not an appropriate RICO defendant. As stated by the United States Court of Appeals for the Seventh Circuit: "[T]he nebulous association in fact does not itself fall within the RICO definition of 'person.' We doubt that an 'association in fact' can, as such, hold any interest in property or even be brought

into court. In the association in fact situation, each participant in the enterprise may be a 'person' liable under RICO, but the association itself cannot be." *Haroco, Inc. v. American National Bank & Trust Co.*, 747 F.2d 384, 401 (7th Cir.1984), *aff'd on other grounds*, 473 U.S. 606, 105 S.Ct. 3291, 87 L.Ed.2d 437 (1985) (*per curiam*). Since the Bonanno Organized Crime Family cannot constitute a "person" under RICO capable of violating § 1962(a), (c), or (d), the Amended Complaint as to that named defendant is dismissed. *See Leonhard v. United States*, 633 F.2d 599, 609 n. 11 (2d Cir.1980), *cert. denied*, 451 U.S. 908, 101 S.Ct. 1975, 68 L.Ed.2d 295 (1981); 5 C. Wright & A. Miller *Federal Practice & Procedure* § 1357 at 593 & n. 43 (1969) (court may dismiss complaint *sua sponte* for failure to state a claim).

### Pattern of Racketeering Activity

■ The RICO offenses listed in § 1962(a)-(c) require that the defendant have engaged in either a "pattern of racketeering activity" or the "collection of an unlawful debt." The Amended Complaint sets forth at least 199 "acts of racketeering" which the government maintains constitute either racketeering activity or the collection of unlawful debts by the defendants.

RICO defines "racketeering activity" as including any act or threat "chargeable" under several types of state criminal laws and punishable by imprisonment for more than one year; any act "indictable" under several specifically enumerated federal criminal provisions; any act "indictable" under 29 U.S.C. §§ 186 and 501(c), relating to labor organizations and union funds; any bankruptcy fraud, securities fraud, or narcotics offense "punishable" under federal law; and any act "indictable" under the Currency and Foreign Transactions Reporting Act. 18 U.S.C. 1961(1); *see Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 481–82, 105 S.Ct. 3275, 3277–78, 87 L.Ed.2d 346 (1985).

The RICO definition of "pattern of racketeering activity" provides:

"[P]attern of racketeering activity" requires at least two acts of racketeering activity, one of which occurred after the effective date of this chapter and the last of which occurred within ten years (excluding any period of imprisonment) after the commission of a prior act of racketeering activity.

18 U.S.C. § 1961(5). The Second Circuit has held that "two related predicate acts will suffice to establish a pattern under 18 U.S.C. § 1961(5)," *Beck v. Manufacturers Hanover Trust*, 820 F.2d 46, 51 (2d Cir. 1987), *cert. denied*, —— U.S. ——, 108 S.Ct. 698, 98 L.Ed.2d 650 (1988), and has specifically rejected a requirement of multiple schemes or episodes for racketeering acts to constitute a pattern. *United States v. Ianniello*, 808 F.2d 184, 192 (2d Cir.1986), *cert. denied*, —— U.S. ——, 107 S.Ct. 3230, 97 L.Ed.2d 736 (1987); *accord, e.g., United States v. Benevento*, 836 F.2d 60, 72 (2d Cir.1987); *see United States v. Coonan*, 839 F.2d 886, 890 n. 3 (2d Cir.1988) ("Two racketeering acts, if committed in furtherance of the affairs of an enterprise, suffice without more to constitute a pattern"). For a "pattern of racketeering" to exist under § 1962(c), all that is required is that the defendant commit at least two acts of racketeering (or "predicate acts") "related to the common purpose of the enterprise." *Albany Insurance Co. v. Esses*, 831 F.2d 41, 44 (2d Cir.1987); *accord United States v. Ianniello*, 808 F.2d at 191–92.

RICO defines "an unlawful debt" as a debt incurred in unlawful gambling activity or unenforceable under state or federal usury laws and which was incurred in connection with an unlawful gambling business or with the business of making usurious loans when the usurious rate is at least twice the enforceable rate. 18 U.S.C. § 1961(6) The statute contains no "pattern" requirement for the collection of an unlawful debt except to the extent it requires that the defendant be engaged in a gambling business or a business of making usurious loans.

 Several of the defendants move to dismiss the Amended Complaint for failure to allege the collection of an unlawful debt

or a pattern of at least two acts of racketeering within the definitional time period for each defendant. The defendants also argue that the Amended Complaint must be dismissed because its allegations of a pattern of racketeering activity do not meet the particularity requirements of Rule 9(b), Fed.R.Civ.P.

The government has attempted to name each defendant, with the exception of Joseph Bonanno, in connection with at least two of the 199 or more acts of racketeering set forth in the Amended Complaint. The sufficiency of those allegations will be discussed below. The government has also, perhaps in an effort to ensure that sufficient predicate acts are alleged for each defendant even if some of the specific acts alleged are found deficient, alleged that each defendant has aided and abetted the commission of all of the acts listed even if the defendant is not specifically named in connection with the predicate act. Paragraph 43 of the Amended Complaint states:

> The Bonanno Family, the individual defendants herein, Local 814, the Local 814 Executive Board and the Local 814 Funds, and others, have committed and aided and abetted in committing the above-enumerated racketeering acts and other racketeering and illegal acts, and continue to commit and aid and abet in committing the above-enumerated racketeering acts and other racketeering and illegal acts, thereby affecting interstate and foreign commerce.

The allegations of the predicate acts themselves contain broad statements that "the individual defendants who are members or associates of the Bonanno Family" engaged in the predicate acts.

The defendants argue both that these general allegations fail to set forth each defendant's participation in the predicate acts with particularity and that the government's aiding and abetting allegation is an improper attempt to impose co-conspirator liability under *Pinkerton v. United States*, 328 U.S. 640, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946), on the defendants for the substantive violation of § 1962(c). While the Court finds Rule 9(b) standards inapplicable to

predicate acts not sounding in fraud, the Court nevertheless holds that the Amended Complaint's broad aiding and abetting allegation may not be used to meet § 1961(5)'s requirement that at least two acts of racketeering per defendant be alleged.

Rule 9(b), Fed.R.Civ.P.,[5] by its terms is limited to allegations of fraud or mistake. *See United States v. Rivieccio,* 661 F.Supp. 281, 290 (E.D.N.Y.1987) (Rule 9(b) not applicable to breach of fiduciary duty, conversion, and unjust enrichment claims); *Bosio v. Norbay Securities, Inc.,* 599 F.Supp. 1563, 1570–71 (E.D.N.Y.1985) (Rule 9(b) not applicable to breach of fiduciary duty and conversion claims); 5 C. Wright & A. Miller, *Federal Practice & Procedure* § 1297 at 405 (1969). Only one of the predicate acts alleged in the Amended Complaint, a mail fraud predicate act alleged against James Vincent Bracco, is based on fraud.

Although Rule 9(b) has frequently been applied in RICO cases, most RICO cases applying the rule have involved predicate acts based upon fraud. *See, e.g., Beck v. Manufacturers Hanover Trust Co.,* 820 F.2d at 49–50 (mail and wire fraud); *Haroco, Inc. v. American National Bank & Trust Co.,* 747 F.2d 384, 405 (7th Cir.1984), *aff'd on other grounds,* 473 U.S. 606, 105 S.Ct. 3291, 87 L.Ed.2d 437 (1985) (*per curiam* ) (mail fraud); *Seville Industrial Machinery Corp. v. Southmost Machinery Corp.,* 742 F.2d 786, 791 (3d Cir.1984), *cert. denied,* 469 U.S. 1211, 105 S.Ct. 1179, 84 L.Ed.2d 327 (1985) (wire and mail fraud, transportation of fraudulently obtained goods); *Connors v. Lexington Insurance Co.,* 666 F.Supp. 434, 450 (E.D.N.Y.1987) (mail and wire fraud); *Andreo v. Friedlander, Gaines, Cohen, Rosenthal & Rosenberg,* 651 F.Supp. 877, 882 (D.Conn.1986) (securities, mail, and wire fraud); *Newman v. L.F. Rothschild, Unterberg, Towbin,* 651 F.Supp. 160, 162 (S.D.N.Y.1986) (mail and wire fraud); *Rhoades v. Powell,* 644 F.Supp. 645, 668–70 (E.D.Cal.1986) (securities, mail, and wire fraud); *Frota v. Prudential–Bache Securities, Inc.,* 639

F.Supp. 1186, 1192 (S.D.N.Y.1986) (securities, mail, and wire fraud); *Levine v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 639 F.Supp. 1391, 1396 (S.D.N.Y.1986) (mail, wire, and securities fraud); *Ichiyasu v. Christie, Manson & Woods International, Inc.,* 637 F.Supp. 187, 189 (N.D.Ill.1986) (mail and wire fraud); *Schnitzer v. Oppenheimer & Co.,* 633 F.Supp. 92, 97 (D.Or. 1985) (mail, wire, and securities fraud); *McLendon v. Continental Group, Inc.,* 602 F.Supp. 1492, 1507 (D.N.J.1985) (mail and wire fraud); *Doxie v. Ford Motor Credit Co.,* 603 F.Supp. 624, 627 (S.D.Ga. 1984) (mail fraud); *Saine v. A.I.A., Inc.,* 582 F.Supp. 1299, 1303 (D.Colo.1984) (wire fraud); *Slattery v. Costello,* 586 F.Supp. 162, 168 (D.D.C.1983) (mail and wire fraud); *In re Sattler's, Inc.,* 73 B.R. 780, 786 (Bankr.S.D.N.Y.1987) (mail, wire, and bankruptcy fraud).

A few courts have, however, suggested that RICO complaints in general, apparently regardless of whether the predicate acts involve fraud, should comport with particularity standards of Rule 9(b). Concerned about the stigma attached to the label of "racketeer" and the possibility of strike suits, these courts have stated that a "RICO plaintiff must meet a higher pleading standard than that imposed on an ordinary plaintiff." *Schnitzer v. Oppenheimer & Co.,* 633 F.Supp. at 97; *see Plount v. American Home Assurance Co.,* 668 F.Supp. 204, 206–07 (S.D.N.Y.1987) ("Yet all of the concerns that dictate that fraud be pleaded with particularity exist with even greater urgency in civil RICO actions"); *see also Taylor v. Bear Stearns & Co.,* 572 F.Supp. 667, 682 (N.D.Ga.1983) (Rule 9(b)'s standards apply to RICO claims).

The Court finds no basis for extending the reach of Rule 9(b) to all RICO cases: "Since the rule is a special pleading requirement and contrary to the general approach of simplified pleading adopted by the federal rules, its scope of application

**5.** Rule 9(b), Fed.R.Civ.P., provides:

(b) Fraud, Mistake, Condition of the Mind. In all averments of fraud or mistake, the circumstances constituting fraud or mistake

shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally.

should be construed narrowly and not extended to other legal theories or defenses." 5 C. Wright & A. Miller, *Federal Practice & Procedure* § 1297 at 405 (1969); *see id.* § 1221 at 149 (Rule 9 is the only special pleading provision in the Federal Rules of Civil Procedure). The Court is not persuaded that the fact that a RICO defendant may be labelled a "racketeer" calls for judicial extension of Rule 9(b)'s scope. *See Sedima, S.P.R.L. v. Imrex Co.* 473 U.S. 479, 492, 105 S.Ct. 3275, 3283, 87 L.Ed.2d 346 (1985) ("As for stigma, a civil RICO proceeding leaves no greater stain than do a number of other civil proceedings"); *Rodonich v. House Wreckers Union Local 95,* 627 F.Supp. 176, 178 (S.D.N.Y.1985) (questioning propriety of altering RICO's pleading burden). The Court therefore will not scrutinize the non-fraud RICO allegations of the Amended Complaint against a heightened particularity standard.

■ Even though Rule 9(b) is not generally applicable to RICO allegations, a complaint purporting to allege a violation of RICO must comply with the notice pleading requirements of Rule 8(a)(2), Fed.R.Civ.P.[6] Rule 8(a) requires that a complaint set forth " 'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 103, 2 L.Ed.2d 80 (1957). Notice pleading requirements are applicable to RICO, and "it is imperative that the court and the defendants be placed on clear notice as to what is being alleged, and what the substance of the claim is, in order to facilitate a decision on the merits of the case." *Ralston v. Capper,* 569 F.Supp. 1575, 1581 (E.D.Mich. 1983); *see Gregoris Motor v. Nissan Motor Corp.,* 630 F.Supp. 902, 913 (E.D.N.Y.1986) (applying Rule 8(a) to RICO complaint).

■ A complaint's insufficiency under Rule 8(a) may provide the basis for a motion to dismiss under Rule 12(b)(6), Fed. R.Civ.P. *See New York v. Cedar Park Concrete Corp.,* 665 F.Supp. 238, 246 (S.D. N.Y.1987); *DeFina v. Latimer,* 79 F.R.D.

5, 6 (E.D.N.Y.1977); 5 C. Wright & A. Miller, *Federal Practice & Procedure,* § 1203 at 66–67 (1969). A RICO plaintiff must allege each of RICO's statutory elements, *Sedima,* 473 U.S. at 496, 105 S.Ct. at 3285, and a complaint which fails to allege one or more of those elements, may be dismissed. *Albany Insurance Co. v. Esses,* 831 F.2d 41 (2d Cir.1987) (failure to plead enterprise); *Beck v. Manufacturers Hanover Trust Co.,* 820 F.2d 46 (2d Cir.1987), *cert. denied,* —— U.S. ——, 108 S.Ct. 698, 98 L.Ed.2d 650 (1988) (same); *Ralston v. Capper,* 569 F.Supp. 1575 (E.D.Mich.1983) (failure to plead predicate acts, violation of § 1962, enterprise).

■ While mindful that a complaint should not be dismissed for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief," *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); *Goldman v. Belden,* 754 F.2d 1059, 1065 (2d Cir.1985), the Court is also aware that it need not assume that conclusory statements as to legal effects or conclusions, deductions, or opinions as to factual allegations are true. 5 C. Wright & A. Miller, *Federal Practice & Procedure,* § 1357 at 597 (1969); 2A J. Moore, J. Lucas, G. Grotheer, *Moore's Federal Practice* ¶ 12.07 [2.–5] at 12.63–64 (2d ed. 1987).

■ The broad allegation of aiding and abetting contained in paragraph 43 of the Amended Complaint is not sufficient under Rule 8 to attribute to each defendant the preceding 199 or more acts of racketeering. A defendant's aiding and abetting the commission of a predicate act may constitute a predicate act itself. 18 U.S.C. § 2; *Petro-Tech, Inc. v. Western Co.* 824 F.2d 1349, 1356–57 (3d Cir.1987); *First Federal Savings & Loan Ass'n v. Oppenheim, Appel, Dixon & Co.,* 629 F.Supp. 427, 445 (S.D.N.Y.1986); *Fireman's Fund Insurance Co. v. Plaza Oldsmobile Ltd.,* 600 F.Supp. 1452, 1456–57 n. 2 (E.D.N.Y.1985). The aiding and ·abetting allegation of the

---

**6.** Rule 8(a)(2) requires that a pleading setting forth a claim for relief contain "a short and plain statement of the claim showing that the pleader is entitled to relief."

Amended Complaint, however, is devoid of allegations as to how the defendants associated themselves with the predicate acts, participated in them as something they wished to bring about, or sought by their actions to make them succeed. *Nye & Nissen v. United States,* 336 U.S. 613, 619, 69 S.Ct. 766, 769, 93 L.Ed. 919 (1949); *United States v. Sigalow,* 812 F.2d 783, 785 (2d Cir.1987). The Amended Complaint's aiding and abetting allegation also runs counter to Rule 8's requirement that "actions brought against multiple defendants must clearly specify the claims with which each particular defendant is charged." 5 C. Wright & A. Miller, *Federal Practice & Procedure,* § 1248 at 226 (1969); *see Laterza v. American Broadcasting Co.,* 581 F.Supp. 408, 412 (S.D.N.Y.1984) (must allege how each defendant aided and abetted specific predicate act).

 It cannot be discerned from the Amended Complaint which defendants are alleged to have aided and abetted which predicate acts or in what manner they aided and abetted the acts. The defendants' alleged association with the Bonanno Organized Crime Family alone is not sufficient to attribute to each defendant all of the predicate acts. Congress specifically declined to make mere membership in an organized crime organization a RICO offense. *See Moss v. Morgan Stanley, Inc.,* 719 F.2d 5, 21 n. 17 (2d Cir.1983), *cert. denied sub nom. Moss v. Newman,* 465 U.S. 1025, 104 S.Ct. 1280, 79 L.Ed.2d 684 (1984) (discussing legislative history). As stated in *United States v. Persico,* 832 F.2d 705, 714 (2d Cir.1987), "[t]he focus of section 1962(c) is on the individual patterns of racketeering engaged in by a defendant, rather than the collective activities of the members of the enterprise." [7]

The government argues, in support of its aiding and abetting allegation, that the structure of the Bonanno Family requires all criminal activity to be approved by the Family hierarchy and that a Bonanno Family member's superiors share in the profits from the members' criminal activity. The structure of the Bonanno Family as alleged in the Amended Complaint, however, could also be viewed as inconsistent with characterizing each individual defendant as an aider and abettor of all the predicate acts by virtue of his association with the Family. A soldier, associate, or capo of one crew, for example, may theoretically have no connection with the activities of another crew.

The aiding and abetting allegation of paragraph 43 does not give each defendant sufficient notice as to the predicate acts alleged against him. The Court therefore will disregard the aiding and abetting allegation in assessing whether the Amended Complaint alleges a "pattern" of racketeering for each defendant and will instead examine only those allegations in which the particular defendant is named. For the same reasons, the Court does not consider general references to "the individual defendants who are members or associates of the Bonanno Family" sufficient to attribute a predicate act to a defendant not named in connection with the act.

 Paragraph 23 of the Amended Complaint entitled "Act of Racketeering # 1" alleges that Gabriel Infanti, Alfred Embarrato, and Louis Attanasio, together with nine named non-defendants and unspecified others, have from 1984 to the present operated, participated in, and shared the profits from an illegal gambling business located at the 4th Street Cafe, 78–80 East 4th Street, New York, New York. The gambling business is alleged to be "in violation of New York State Penal Law Sections 225.00–225.401." This allegation in itself is not sufficient to allege an act of racketeering under 18 U.S.C. § 1961(1)(A) since the sections of the New

---

7. The defendants have argued at length that the Amended Complaint seeks to hold each defendant responsible for all the predicate acts alleged under principles of co-conspirator liability established in *Pinkerton v. United States,* 328 U.S. 640, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946). The Court believes it is neither necessary nor useful to discuss the possible application of *Pinkerton* to RICO cases since the Amended Complaint in this action does not seek to attribute predicate acts to defendants based upon *Pinkerton* and the government has disclaimed any reliance on *Pinkerton* in its predicate act allegations. (Government Brief at 35 n. 14)

York Penal Law cited include both felony and misdemeanor offenses [8] and there is no N.Y.Penal L. § 225.401. The Amended Complaint, however, also alleges that the 4th Street Cafe gambling operation involves five or more persons and has been or remains in substantially continuous operation for more than thirty days, or has a gross revenue of $2,000 in any single day. Paragraph 23 thus alleges the elements of a violation of 18 U.S.C. § 1955 [9] and sufficiently pleads a predicate act attributable to Infanti, Embarrato, and Attanasio under 18 U.S.C. § 1961(1)(B).

Paragraph 24 entitled "Act of Racketeering # 2" similarly alleges that Attanasio, together with an individual not named as a defendant and unspecified others, has operated and owned and currently operates and owns an illegal gambling business or "numbers hole" at 405 Myrtle Avenue, Brooklyn, New York. The Myrtle Avenue gambling operation is alleged to be in violation of N.Y.Penal L. §§ 225.00–225–401 [sic], to have operated for more than thirty days or to have a gross revenue of $2,000 in a day and to involve five or more persons. Paragraph 24 thus sufficiently pleads a violation of 18 U.S.C. § 1955 qualifying as a predicate act attributable to Attanasio under § 1961(1)(B).

Paragraph 25 entitled "Act of Racketeering # 3" alleges that Joseph Massino, Attanasio, Infanti, Anthony Graziano, and four named individuals who are not defendants have operated and owned and continue to operate and own an illegal gambling operation at J & S Cake, 58–23 58th Road, Maspeth, Queens, New York. Like the allegations of the 4th Street Cafe and Myrtle Avenue operations, the allegations concerning the J & S Cake gambling operation state the elements of a violation of 18 U.S.C. § 1955 and thus sufficiently plead a predicate act under 18 U.S.C. § 1961(1)(B) attributable to Massino, Attanasio, Infanti, and Graziano.

Paragraph 26 entitled "Act of Racketeering # 4" alleges that in 1977 Frank Lino was charged with gambling offenses under N.Y.Penal L. §§ 225.05 & 225.30 and that Lino pleaded guilty to violating § 225.05 in 1978. Since violations of both §§ 225.05 and 225.30 are misdemeanors, the allegations of paragraph 26 do not plead a predicate act under § 1961(1)(A).

Paragraph 27 of the Amended Complaint entitled "Act of Racketeering # 5" alleges narcotics violations by Salvatore Catalano who is not a defendant in this action. None of the defendants in this action are mentioned in paragraph 27; nor are any of them named as defendants or alleged to have committed crimes in the indictment in *United States v. Badalamenti*, 84 Cr. 236 (S.D.N.Y.), submitted as Exhibit B to the Amended Complaint.[10] Paragraph 27 thus fails to plead a predicate act attributable to any of the defendants and will be stricken from the Amended Complaint as immaterial under Rule 12(f), Fed. R.Civ.P. Exhibit B is also stricken.

---

**8.** A "felony" under New York law "means an offense for which a sentence to a term of imprisonment in excess of one year may be imposed." A term of imprisonment for a misdemeanor may not exceed one year. N.Y. Penal L. § 10.00(4) & (5). Section 1961(1)(A) defines the first category of racketeering activity as including certain offenses, including gambling offenses, "chargeable under State law and punishable by imprisonment for more than one year."

**9.** 18 U.S.C. § 1955 makes it illegal to conduct, finance, manage, supervise, direct, or own an "illegal gambling business" which is defined as follows:

(1) "illegal gambling business" means a gambling business which—

(i) is a violation of the law of a State or political subdivision in which it is conducted;

(ii) involves five or more persons who conduct, finance, manage, supervise, direct, or own all or part of such business; and

(iii) has been or remains in substantially continuous operation for a period in excess of thirty days or has a gross revenue of $2,000 in any single day.

18 U.S.C. § 1955(b)(1).

**10.** The Court is at a loss to understand the purpose of burdening the record in this case with this 148 page indictment which makes only passing reference of no substantive significance to three defendants. This Court looks with askance upon the practice of annexing such an indictment for the purpose of incorporating it into the complaint rather than succinctly pleading the facts intended to be alleged.

Paragraph 28 entitled "Act of Racketeering # 6" alleges that approximately once a week from 1973 to 1976 Massino and unnamed others conspired together and aided and abetted the transportation of contraband cigarettes from Washington, D.C. to New Jersey and New York in violation of 18 U.S.C. § 2343(a). This allegation appears to confuse 18 U.S.C. § 2342, the statute outlawing trafficking in contraband cigarettes, with § 2343(a), the statute requiring recordkeeping for transactions involving more than 60,000 cigarettes. Moreover, while aiding and abetting a violation of § 2342 or § 2343 may constitute a predicate act, *see Fireman's Fund Insurance Co. v. Plaza Oldsmobile Ltd.*, 600 F.Supp. 1452, 1457 n. 2 (E.D.N.Y. 1985), conspiracy to violate § 2342 or § 2343 is not "indictable under" those sections but rather is indictable under 18 U.S. C. § 371 and cannot serve as a predicate act under 18 U.S.C. § 1961(1)(B). *See United States v. Ruggiero*, 726 F.2d 913, 920 (2d Cir.), *cert. denied sub nom. Rabito v. United States*, 469 U.S. 831, 105 S.Ct. 118, 83 L.Ed.2d 60 (1984). The Court therefore finds that paragraph 28 fails to allege a predicate act attributable to Massino and grants Massino's motion for a more definite statement as to paragraph 28.[11]

Paragraph 29 entitled "Act of Racketeering # 7" alleges that Infanti was convicted of transporting stolen stock certificates in violation of 18 U.S.C. § 2314. *See United States v. Infanti*, 474 F.2d 522 (2d Cir.1973).[12] Paragraph 29 sufficiently alleges a predicate act attributable to Infanti under § 1961(1)(B).

Paragraph 30 entitled "Act of Racketeering # 8" alleges that in 1973 Rastelli was convicted of seven counts of criminal usury in violation of N.Y.Penal L. § 190.42 and conspiracy to commit criminal usury, *see People v. Rastelli*, 37 N.Y.2d 240, 371 N.Y.S.2d 911, 333 N.E.2d 182, *cert. denied*, 423 U.S. 995, 96 S.Ct. 421, 46 L.Ed.2d 369 (1975), and that by those crimes Rastelli used, threatened to use, or conspired to use "extortionate means to collect, attempt to collect, or punish for nonpayment of, an extension of credit." The criminal usury allegation itself does not plead a predicate act under § 1961(1)(A), since usury is not a listed offense. The facts stated in the *Rastelli* decision, if properly made part of the complaint, would allege collection of an unlawful debt under § 1961(6), since the interest rates charged were more than twice twenty-five percent a year. Rastelli, in any event, has not challenged the sufficiency of the allegations in paragraph 30,[13] and the Court finds that paragraph 30 sufficiently alleges either the collection of an unlawful debt or a violation of 18 U.S.C. § 894 (collection of credit by extortionate means) which is a predicate act under 18 U.S.C. § 1961(1)(B).

Paragraph 31 entitled "Acts of Racketeering # 9–11" alleges that in 1976 Rastelli was convicted of restraining trade in violation of 15 U.S.C. § 1 and interfering with commerce by extortion under 18 U.S. C. §§ 1951 and 1952, as set forth in the indictment and judgment and commitment order submitted as Exhibit C to the Amended Complaint. *See United States v. Rastelli*, 551 F.2d 902 (2d Cir.), *cert. denied*, 434 U.S. 831, 98 S.Ct. 115, 54 L.Ed.2d 91

**11.** Massino also argues that paragraph 28 fails to meet the particularity requirements of Rule 9(b). As discussed above, Rule 9(b) is not applicable to predicate acts not involving fraud. Paragraph 28 is, however, insufficient under Rule 8 to give Massino notice as to the alleged crime committed. Paragraph 28 should therefore be eliminated or made more specific if the government files a second amended complaint.

**12.** As discussed *infra* in connection with paragraph 39, the Court questions whether it is sufficient for a complaint to refer to judicial decisions, as paragraphs 29, 30, and 31 do to the *Infanti* and *Rastelli* decisions, without submit-

ting them as exhibits to the complaint under Rule 10(c), Fed.R.Civ.P. Rather than relying on a general reference to a judicial decision, the government should allege the facts upon which it relies in its complaint.

**13.** Rastelli has not filed a brief in support of his motion to dismiss but instead "join[s] in, adopt[s], and incorporate[s] by reference each of those arguments [of the other defendants] as are germane to but not inconsistent with Mr. Rastelli's defense of this action." (Teitler Affidavit ¶ 2)

**1432**

(1977).[14] Paragraph 31 also alleges that the crimes for which Rastelli was prosecuted also were "indictable" under 18 U.S.C. §§ 891–894. Paragraph 31, however, alleges no additional facts such as an extension of credit, indicating offenses under §§ 891–894. Exhibit C also fails to indicate that Rastelli was charged with a violation of 18 U.S.C. § 1952. Moreover, a violation of 15 U.S.C. § 1 is not a predicate act under RICO. Rastelli, however, has not challenged the sufficiency of paragraph 31, and the Court finds that it at least sufficiently pleads violations of 18 U.S.C. § 1951 which constitute predicate acts under § 1961(1)(B).

■■■■ Paragraph 32 entitled "Act of Racketeering # 12" alleges that in 1980 Embarrato was charged with criminal usury in the first degree, a violation of N.Y.Penal L. § 190.42, and in 1982 pleaded guilty to criminal usury in the second degree, a violation of N.Y.Penal L. § 190.40. The indictment and certificate of disposition recording Embarrato's guilty plea, submitted as Exhibit D to the Amended Complaint, reveal little of the facts underlying the criminal usury charge but do indicate that, contrary to the allegations of the Amended Complaint, Embarrato pleaded guilty to attempted criminal usury in the second degree, a misdemeanor. Criminal usury is not one of the state law offenses listed under § 1961(1)(A) and therefore does not constitute a RICO predicate act. Paragraph 32 also fails to allege that Embarrato engaged in the collection of an unlawful debt as defined in § 1961(6) because it does not allege either that the debt was incurred in connection with a gambling business or a

business of lending at an interest rate at least twice the enforceable rate.[15]

■■■■ Paragraph 33 entitled "Act of Racketeering # 13" alleges that in 1984 Graziano was charged with committing criminal usury in violation of N.Y.Penal L. § 190.42 and in 1985 pleaded guilty to attempting to violate N.Y. Penal L. § 190.40. The indictment filed against Graziano alleges that Graziano was in the business of making usurious loans and made loans at a rate of 260 percent a year, which is more than twice the maximum allowable rate under the usury statute of twenty-five percent a year. The indictment, submitted as Exhibit E to the Amended Complaint, is deemed to be part of the Amended Complaint. Rule 10(c), Fed.R.Civ.P. While usury is not an act of racketeering as defined in 18 U.S.C. § 1961(1)(A), paragraph 33, together with the indictment, sufficiently pleads the collection of an unlawful debt under § 1961(6) attributable to Graziano.[16]

■■■ Paragraph 34 entitled "Act of Racketeering # 14" alleges that in 1984 Lino was charged with criminal usury in violation of N.Y.Penal L. § 190.42 and in 1985 pleaded guilty to the attempted violation of § 190.40. Paragraph 34 and the indictment submitted as Exhibit F to the Amended Complaint, however, fail to allege that the debt involved was incurred in connection with a gambling business or the business of lending money at a rate at least twice the enforceable rate. Paragraph 34 therefore pleads neither a predicate act under § 1961(1) nor the collection of an unlawful debt under § 1961(6).

Paragraph 35 of the Amended Complaint entitled "Act of Racketeering # 15" alleges

---

**14.** The Amended Complaint states that Rastelli was convicted on August 27, 1976, while the Second Circuit decision states he was convicted on April 23, 1976. The Court assumes that the Amended Complaint has confused Rastelli's date of sentencing with his date of conviction.

**15.** The indictment alleges that Embarrato was engaged in the "business of making and collecting usurious loans" but does not indicate the interest rate at which the loans were made except to state that the rate exceeded the maximum allowable rate of twenty-five percent per annum.

**16.** The Court does not find that the fact that Graziano pleaded guilty to attempting to commit criminal usury in the second degree, a misdemeanor, makes the allegations underlying act of racketeering # 13 defective. First, § 1961(6) does not turn on a distinction between misdemeanors and felonies. Second, while an attempt to collect an unlawful debt may not constitute actual collection of that debt, the government's pleading is not limited to Graziano's guilty plea but also includes the allegations of the indictment.

that in 1980 Anthony Spero was charged with criminal usury and in 1982 pleaded guilty to attempting to violate N.Y.Penal L. § 190.40. The indictment submitted as Exhibit G to the Amended Complaint, alleges that Spero was engaged in the business of making usurious loans but does not allege that the loans were made at a rate of at least twice the enforceable rate. The allegations of "Act of Racketeering # 15" therefore do not amount to a predicate act under § 1961(1) or collection of an unlawful debt under § 1961(6).

■■ Paragraph 36 entitled "Acts of Racketeering # 16–194" alleges that in 1985 Rastelli, Marangello, Massino, and James Vincent Bracco were indicted and charged with numerous racketeering acts involving Local 814, Local 814 Funds, and several moving and storage companies in *United States v. Rastelli*, 85 Cr. 00354 (E.D.N.Y.). The racketeering acts alleged in the indictment, submitted as Exhibit H to the Amended Complaint, include violations of 29 U.S.C. § 186 (restrictions on payments and loans to labor organizations) and 18 U.S.C. §§ 1341 (mail fraud), 1951 (interference with commerce by robbery or extortion), and 1954 (unlawful payments in connection with employee benefit plans) and felony offenses involving arson and robbery under New York law. These offenses qualify as predicate acts under § 1961(1)(A), (B), and (C). Paragraph 36, together with the indictment, sufficiently pleads approximately seventy-one acts of racketeering attributable to Rastelli, forty attributable to Marangello, eighteen attributable to Massino, and eighty-four attributable to James Vincent Bracco.[17] The defendants do not dispute the sufficiency of the allegations of paragraph 36.

Paragraph 37 entitled "Act of Racketeering # 195" alleges that in 1982 Rastelli, Massino, Marangello, James Vincent Bracco, and William Rodini conspired to murder Anthony Giliberti, formerly of Local 814's Executive Board, in violation of both N.Y. Penal L. § 125.27 and 18 U.S.C. § 1951. The defendants do not dispute that paragraph 37 sufficiently alleges a predicate act attributable to those five defendants under § 1961(1)(A) & (B).

Paragraph 38 entitled "Act of Racketeering # 196" alleges that Rastelli, Massino, Marangello, James Vincent Bracco, and Rodini have violated 18 U.S.C. § 1951 by conspiring and acting to deprive Paul Poulos, a member of Local 814, from obtaining employment and exercising labor contractual and union membership rights. The defendants have not challenged the sufficiency of the pleading of this predicate act under § 1961(1)(B).

■■ Paragraph 39 entitled "Act of Racketeering # 197" alleges that Ruggiero, Sabella, and Riela have interfered or attempted or conspired to interfere with commerce by extortion in violation of 18 U.S.C. § 1951 as reflected in *United States v. Balistrieri*, 778 F.2d 1226 (7th Cir.1985), *cert. denied*, 477 U.S. 908, 106 S.Ct. 3284, 91 L.Ed.2d 573 (1986), a case in which Ruggiero, Sabella, and others were prosecuted for conspiring and attempting to carry out a scheme to extort money and a proprietary interest in a Milwaukee vending machine company from FBI agent Gail Cobb during the period May 1978 to February 1979.[18] Paragraph 38 of the original Complaint, which Sabella moves to dismiss, contains the same allegations as paragraph 39 of the Amended Complaint. Riela was neither charged in the *Balistrieri* case nor mentioned in the opinion; paragraph 39 therefore fails to allege a predicate act attributable to him.

If the Seventh Circuit opinion is deemed to be incorporated by reference, paragraph 39 alleges a predicate act attributable to Sabella and one, or possibly two, predicate acts attributable to Ruggiero.[19] The Court

---

**17.** Rastelli, Massino, Marangello, and James Vincent Bracco were convicted of various offenses alleged in the indictment including a RICO conspiracy under 18 U.S.C. § 1962(d).

**18.** Ruggiero pleaded guilty to both conspiring and attempting to carry out the extortion scheme. Sabella was charged only with the conspiracy count of which he was acquitted.

**19.** Conspiracy to carry out an extortion scheme and attempting to carry out an extortion scheme are arguably two different RICO predicates. The Amended Complaint and the government's

questions, however, the sufficiency of merely citing a judicial decision in a complaint as a means of incorporating the facts stated in the decision by reference. *See Goldman v. Belden*, 754 F.2d 1059, 1066 (2d Cir.1985) (selective quotation from document does not amount to incorporation by reference); 5 C. Wright & A. Miller, *Federal Practice & Procedure* § 1327 at 494 (1969) (reference to existence of document not sufficient). Moreover, general reference to a judicial decision does not serve to give the defendants notice of the facts which the government intends to allege. If the government chooses to file another amended complaint against Sabella or Ruggiero,[20] it should describe the predicate acts of which each is accused in the body of the complaint.

Paragraph 40 entitled "Act of Racketeering # 198" alleges that from January 1978 to December 1980, Ruggiero, Sabella, and Riela extorted, attempted to extort, and aided and abetted the extortion of Gail Cobb in violation of 18 U.S.C. § 1951. Paragraph 40 again cites *United States v. Balistrieri*, 778 F.2d 1226 (7th Cir.1985), *cert. denied*, 477 U.S. 908, 106 S.Ct. 3284, 91 L.Ed.2d 573 (1986), and refers to paragraph 39. Nothing alleged in paragraph 40, which was not contained in the original Complaint, distinguishes its allegations from those contained in paragraph 39 except that paragraph 40 refers to a time period which is broader than but includes the time period in paragraph 39.[21] Paragraph 40 therefore appears to duplicate paragraph 39 and will not be considered separately in assessing the sufficiency of the predicate acts alleged.[22]

Paragraph 41, which has no heading, alleges that Rastelli was indicted in 1975 and convicted in 1973 of violating 15 U.S.C. § 1, 18 U.S.C. § 1951, and 18 U.S.C. § 1952. Not only is the allegation that Rastelli was convicted two years before he was indicted self-contradictory but paragraph 41 also refers back to paragraph 31, and it is not clear whether the two paragraphs refer to the same predicate acts. Although Rastelli has not challenged the sufficiency of paragraph 41's allegations, the Court does not consider the violations of 18 U.S.C. §§ 1951 and 1952 to be adequately pleaded predicate acts.

Paragraph 42 (a)–(f) entitled "Act of Racketeering # 199" alleges that from 1983 to the present Spero has extorted, attempted to extort, aided and abetted in extorting, and conspired to extort the owner-operators of Big Apple Car and/or E.Z. Two Way Radio Corp. in violation of 18 U.S.C. § 1951. Subparagraphs (a) through (f) allege "the following act [sic]" committed through the use or threatened use of violence: (a) forcing owner-operators to execute a loan agreement, (b) prohibiting owner-operators from reselling car radios, (c) forcing owner-operators to make extra-contractual payments to receive dispatch calls, (d) refusing to return sums advanced by the owner-operators, (e) forcing owner-operators to abide by fines and penalties imposed by a "security team," and (f) forcing owner-operators to pay for insurance which was not provided. The government has by letter stated that paragraph 42 was inadvertently given the wrong heading and should have been entitled "Acts of Racketeering 199–205," presumably meaning "Acts of Racketeering 199–204." Spero argues that paragraph 42 fails to provide sufficient details consistent with Rule 9(b),

---

brief, however, do not characterize Ruggiero's conspiracy and attempt as separate acts.

**20.** As discussed *infra* the Court is granting Ruggiero's motion to dismiss the Amended Complaint and Sabella's motion to dismiss the original Complaint because the complaints fail to allege at least two predicate acts each for Sabella and Ruggiero.

**21.** The government's brief refers to the allegations of paragraph 39 as occurring in 1983. That year, however, is the date of Ruggiero's conviction and not the date the acts alleged occurred.

**22.** The government's brief refers to another decision entitled *United States v. Balistrieri*, 779 F.2d 1191 (7th Cir.1985), a gambling prosecution in which Ruggiero was an unindicted co-conspirator. The Complaint and Amended Complaint, however, do not refer to or incorporate as an exhibit that decision; nor does the Amended Complaint make any allegations which appear related to that decision.

Fed.R.Civ.P., as to the acts committed which on their face appear to be normal incidents of a legitimate business operation. As discussed above, Rule 9(b) is not applicable to non-fraud predicate acts. The Court finds that paragraph 42 provides sufficient notice to alert Spero as to the nature of the predicate acts alleged. The government may correct the heading of paragraph 42 in any amended complaint it files.

Having examined the sufficiency of the predicate acts alleged in the Amended Complaint, the Court will now examine whether a "pattern" of racketeering activity or collection of an unlawful debt as defined in 18 U.S.C. § 1961(1), (5) & (6) has been alleged as to each defendant.

■ *Joseph Bonanno.* The Amended Complaint alleges that defendant Joseph Bonanno was the founder of the Bonanno Family, remained its boss until October 21, 1964, and "remains a member of the Bonanno Family." (Amended Complaint ¶ 4(d) & (e)) The seventy-seven page Amended Complaint contains no other allegations concerning Joseph Bonanno and he is not mentioned in any of the alleged acts of racketeering. The first, second, third, and twelfth claims for relief are therefore dismissed against Joseph Bonanno because the Amended Complaint fails to allege that Bonanno engaged in a "pattern of racketeering activity or collection of unlawful debt" as required by § 1962(c).

■ *Philip Rastelli.* The Amended Complaint alleges that Rastelli has been at various times and is currently the Boss of the Bonanno Family. (Amended Complaint ¶¶ 4(f) & 8) The Amended Complaint alleges approximately seventy-seven sufficient predicate acts attributable to Rastelli (paragraphs 30, 31, 36, 37, 38) which occurred in each year except 1973 between 1966 and 1983 and one of which is apparently continuing.[23] The Amended Complaint therefore alleges a "pattern" of racketeering activity attributable to Rastelli.

*Joseph Massino.* Massino is alleged to be the current Underboss of the Bonanno Family and to have also been at various times Underboss and a Capo. (Amended Complaint ¶¶ 4(f) & 9) The Amended Complaint names Massino in connection with approximately twenty-one sufficiently pleaded acts of racketeering (paragraphs 25, 36, 37, 38) occurring in 1981–83 and at the present. The Amended Complaint thus sufficiently pleads a pattern of racketeering activity attributable to Massino.

*Anthony Spero.* Spero is alleged to be the current Acting Boss and Consigliere of the Bonanno Family and to have been at various times Acting Boss, Underboss, and Capo. (Amended Complaint ¶¶ 4(f) & 10) The only adequately pleaded predicate acts attributable to Spero are contained in paragraph 42 which sets forth six categories of predicate acts occurring from 1983 to the present. The Amended Complaint sufficiently alleges a pattern of racketeering activity attributable to Spero.

*Louis Attanasio.* Attanasio is alleged to be a Bonanno Family Capo. (Amended Complaint ¶ 11) Paragraphs 23, 24, and 25 sufficiently allege three predicate acts attributable to Attanasio occurring from 1984 to the present. The Amended Complaint therefore sufficiently pleads a pattern of racketeering activity attributable to Attanasio.

■ *Alfred Embarrato.* Embarrato is alleged to be a Bonanno Family Capo. (Amended Complaint ¶ 12) Only one adequately pleaded predicate act (paragraph 23) is attributable to Embarrato. The Amended Complaint therefore fails to allege a pattern of racketeering activity for Embarrato, and the first, second, third, and twelfth claims for relief must be dismissed as against him.

■ *Gabriel Infanti.* Infanti is alleged to be a Bonanno Family Capo. (Amended Complaint ¶ 13) Although three predicate acts attributable to Infanti (paragraphs 23, 25, 29) are pleaded, it is not clear whether act of racketeering # 7 (paragraph 29) may be included in a "pattern" of racketeering activity for Infanti since act # 7 occurred in 1969 and there is no allegation that either of the other two of Infanti's

---

**23.** Paragraph 38 appears to allege a continuing violation. See also Amended Complaint ¶ 63(j).

racketeering acts occurred within ten years of act #7 as required by 18 U.S.C. § 1961(5). The allegations of paragraph 29 therefore cannot be considered part of a pattern of racketeering activity attributable to Infanti. Paragraphs 23 and 25, however, sufficiently plead a pattern for Infanti.[24]

*Frank Lino.* Lino is alleged to be a Bonanno Family Capo. (Amended Complaint ¶ 14) Since the only alleged predicate acts involving Lino (paragraphs 26 and 34) are not adequately pleaded, the Amended Complaint fails to allege a "pattern" of racketeering with respect to Lino and the first, second, third, and twelfth claims for relief are dismissed as against him.

*Nicholas Marangello.* Marangello is alleged to be a current soldier and made member of the Bonanno Family and to have been at other times Boss and Underboss. (Amended Complaint ¶¶ 4(f) & 15) The Amended Complaint names Marangello in connection with approximately forty-two acts of racketeering (paragraphs 36, 37, 38) occurring during 1975–80 and 1982 and apparently continuing to the present (paragraphs 38, 63(j)). The Amended Complaint thus sufficiently alleges a pattern of racketeering activity attributable to Marangello.

*Anthony Riela.* Riela is alleged to be a soldier and made member of the Bonanno Family. (Amended Complaint ¶ 16) The only acts of racketeering attributed to Riela (paragraphs 39, 40) are insufficiently pleaded. The Amended Complaint therefore fails to allege a pattern of racketeering activity for Riela, and the first, second, third, and twelfth claims for relief must be dismissed as against him.

*Michael Sabella.* Sabella is alleged, in both the original and Amended Complaints, to be a soldier and made member of the Bonanno Family. (Complaint ¶ 17; Amended Complaint ¶ 17) The original Complaint only mentions Sabella in connection with one predicate act (paragraph 38) and therefore fails to allege a pattern of racketeering activity attributable to Sabella. For that reason, the 1962(c) claims of the original Complaint are dismissed as against Sabella. In addition, since the Amended Complaint fails to allege two predicate acts attributable to Sabella (see discussion of paragraphs 39 and 40), it also fails to plead a pattern of racketeering activity for Sabella. The government's motion to serve Sabella with the Amended Complaint is therefore denied because that complaint would not withstand a motion by Sabella to dismiss. *See Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962) (amendment should not be permitted where it would be futile). The government, however, will be given leave to file a complaint against Sabella consistent with this Memorandum and Order.

*Anthony Graziano.* Graziano is alleged to be a soldier and made member of the Bonanno Family. (Amended Complaint ¶ 18) Although the Amended Complaint sufficiently alleges only one act of racketeering for Graziano (paragraph 25) and therefore does not plead a pattern, the Amended Complaint does adequately plead the collection of an unlawful debt attributable to Graziano (paragraph 33).

*Benjamin Ruggiero.* Ruggiero is alleged to be a soldier and made member of the Bonanno Family. (Amended Complaint ¶ 19) The Amended Complaint's only allegations of acts of racketeering naming Ruggiero (paragraphs 39 and 40) fail sufficiently to plead two or more predicate acts. The Amended Complaint therefore fails to allege a pattern of racketeering attributable to Ruggiero, and the first, second, third, and twelfth claims for relief are dismissed as against him.

*James Vincent Bracco.* James Vincent Bracco is alleged to be an associate of the

---

24. Infanti argues that the operation of the two gambling operations alleged in paragraphs 23 and 25 should be deemed to be the same offense. The two paragraphs, however, allege different locations and participants and therefore on their face do not allege the same offense. Moreover, even if, as Infanti argues, the two gambling operations are part of the same scheme, they may still taken together constitute a pattern. *United States v. Ianniello,* 808 F.2d 184, 192 (2d Cir.1986), *cert. denied,* — U.S. ——, 107 S.Ct. 3230, 97 L.Ed.2d 736 (1987) (rejecting multiple scheme requirement).

Bonanno Family and a former president of the Local 814 Executive Board. (Amended Complaint ¶ 20) The Amended Complaint names Bracco in connection with approximately eighty-six sufficiently pleaded acts of racketeering (paragraphs 36, 37, 38) occurring in each year between 1972 and 1983 and continuing at present. The Amended Complaint thus sufficiently pleads a pattern of racketeering activity attributable to Bracco.

*William Rodini.* Rodini is alleged to be an associate of the Bonanno Family. (Amended Complaint ¶ 21) Paragraphs 37 and 38 sufficiently plead two predicate acts attributable to Rodini, one occurring in 1982 and one apparently continuing to the present. The Amended Complaint therefore sufficiently pleads a pattern of racketeering attributable to Rodini.

■ An examination of the number and dates of the predicate acts alleged does not end the inquiry into the sufficiency of the pattern allegations of the Amended Complaint. Not only must the predicate acts alleged for each defendant form a pattern, but they must also "be related to the common purpose of the enterprise." *Albany Insurance Co. v. Esses,* 831 F.2d 41, 44 (2d Cir.1987); *see United States v. Ianniello,* 808 F.2d 184, 191, 192 (2d Cir.1986), *cert. denied,* —— U.S. ——, 107 S.Ct. 3230, 97 L.Ed.2d 736 (1987).

■ The same enterprise, the Bonanno Family, is alleged in the Amended Complaint's first three claims for relief. The purpose of the enterprise, however, is different for each claim. Although not explicit, the purpose of the enterprise as alleged in the first claim for relief appears to be the general purpose of conducting various illegal activites for profit. The purposes of the Bonanno Family expressed in the second and third claims for relief, however, are narrower.

The second claim for relief alleges the defendants conspired through the Bonanno Family to obtain government moving contracts by collusion and bid-rigging. The second claim for relief specifically names Rastelli, Massino, Marangello, James Vincent Bracco, and Rodini and refers to paragraph 36 of the Amended Complaint and racketeering acts "63–82 [sic–81]" of the indictment in *United States v. Rastelli,* 85 CR 00354 (E.D.N.Y.), submitted as Exhibit H to the Amended Complaint. Those racketeering acts, which are incorporated into the Amended Complaint in paragraph 36, set forth allegations of at least two acts each by Rastelli, Massino, Marangello, and James Vincent Bracco. Neither the Rastelli indictment nor the Amended Complaint, however, contain allegations that Rodini, Spero, Attanasio, Infanti, or Graziano participated in acts of racketeering related to the purpose of obtaining government contracts through bid-rigging and collusion. The second claim for relief should therefore be dismissed as against Rodini, Spero, Attanasio, Infanti, and Graziano and, as will be discussed in the second part of this memorandum, is also dismissed on other grounds as to all defendants.[25]

Similarly, the third claim for relief alleges that the defendants through the Bonanno Family caused Local 814 to be a captive labor organization. The third claim for relief specifically refers to paragraphs 36–38 of the Amended Complaint, which are the only alleged acts of racketeering relating to Local 814. Paragraphs 36–38 allege predicate acts attributable only to Rastelli, Marangello, Massino, James Vincent Bracco, and Rodini. The third claim for relief is therefore dismissed as to Spero, Attanasio, Infanti, and Graziano because the Amended Complaint fails to allege that those defendants engaged in a pattern of racketeering related to the enterprise's purpose as set forth in the third claim.

The twelfth claim for relief alleges that the defendants conducted the affairs of the Local 814 Enterprise so as to make it a captive labor organization. The twelfth claim for relief specifically refers to paragraphs 36–38 of the Amended Complaint, as well as the third claim for relief. Ras-

**25.** As discussed *infra* the government lacks standing to sue for monetary damages which is the only relief sought in the second claim.

telli, Massino, Marangello, James Vincent Bracco, and Rodini are the only defendants alleged to have engaged in a pattern of racketeering relating to Local 814. The twelfth claim for relief will therefore be dismissed as against Spero, Attanasio, Infanti, and Graziano because the Amended Complaint fails to allege that they engaged in a pattern of racketeering related to Local 814.[26]

### The 1962(a) Claims

The fourth through eleventh claims for relief allege violations of 18 U.S.C. § 1962(a) and seek divestiture of eight different business enterprises. Section 1962(a) provides, in relevant part:

(a) It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity or through collection of an unlawful debt in which such person has participated as a principal within the meaning of section 2, title 18, United States Code, to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

Each of the 1962(a) claims for relief alleges a different enterprise and each alleges that specific defendants "together with others known and unknown" have received income from the racketeering activity previously set forth in the Amended Complaint and invested such income in the enterprise. The 1962(a) claims may be broken down as follows:

| Claim | Enterprise | Defendants |
|---|---|---|
| fourth | 4th Street Cafe Gambling Enterprise | Rastelli, Massino, Spero, Attanasio, Embarrato, Infanti |
| fifth | Myrtle Avenue Gambling Enterprise | Rastelli, Massino, Spero, Infanti |
| sixth | J & S Cake Gambling Enterprise | Rastelli, Massino, Spero, Attanasio, Embarrato, Infanti |
| seventh | Hudson Plaza Hotel | Rastelli, Massino, Attanasio, Embarrato, Spero, Riela |
| eighth | Newark Airport Motel | Rastelli, Massino, Attanasio, Embarrato, Spero, Riela |
| ninth | Belleville Motor Lodge | Rastelli, Massino, Attanasio, Embarrato, Spero, Riela |
| tenth | Big Apple Car/E.Z. Two Way Radio Corp. | Rastelli, Massino, Attanasio, Embarrato, Spero |
| eleventh | Casa Bella Restaurant | Sabella |

### Enterprise

The fourth through sixth claims for relief allege enterprises consisting of "groups of individuals associated in fact" and the seventh through eleventh claims allege enterprises which are legal entities.

---

**26.** Although Spero is specifically named in the twelfth claim for relief, the Amended Complaint does not allege that Spero engaged in any predicate acts relating to Local 814. See also fn. 3 questioning the sufficiency of the allegation that the defendants other than Rastelli, Massino, Marangello, James Vincent Bracco, and Rodini were employed by or associated with the Local 814 Enterprise.

All of the enterprises are alleged to be engaged in or to conduct activities affecting interstate commerce. The enterprise allegations of the fourth through eleventh claims for relief are sufficient.

### Persons

 As with the § 1962(c) claims, the § 1962(a) claims must be restricted to those defendants actually named in the claims. The references to "others known and unknown" are insufficient under Rule 8(a) to include in the claims any defendants not actually named. To the extent the fourth through eleventh claims purport to assert claims against unnamed defendants, they are dismissed.

### Pattern of Racketeering

 The patterns of racketeering activity for the § 1962(a) claims are the same as those alleged for the § 1962(c) claims. Since the Amended Complaint fails to allege sufficient predicate acts to constitute a pattern of racketeering for Embarrato and Riela, the fourth and sixth through tenth claims for relief which name Embarrato and Riela are also dismissed as against those defendants.

The original Complaint did not name Sabella in any of the § 1962(a) claims (the fourth through tenth claims for relief). The Court therefore grants Sabella's motion to dismiss those claims. The Amended Complaint names Sabella in the eleventh claim for relief but fails to allege sufficiently that Sabella committed predicate acts constituting a pattern of racketeering. Amending the Complaint to assert the eleventh claim for relief as it currently exists in the Amended Complaint against Sabella would be futile.

The predicate acts as to the remaining defendants allege that the defendants engaged in acts of racketeering as "principals" as required by § 1962(a). Each of the remaining defendants is alleged to have engaged in at least two acts of racketeering from which unlawful income could be derived, e.g., the conduct of gambling operations, extortion, and receipt of pay-offs.

### Investment of Proceeds

 The § 1962(a) claims allege that the defendants have invested and are investing the proceeds of racketeering activity in the eight enterprises. The Amended Complaint contains no allegations as to the amount, form, manner, or timing of the investment. Such specificity, however, is not required, particularly in light of the language of § 1962(a) which encompasses both direct and indirect investment. The § 1962(a) claims sufficiently allege the investment of racketeering proceeds.

In sum, the fourth through eleventh claims for relief are dismissed as against Joseph Bonanno, Embarrato, Lino, Marangello, Riela, Graziano, Ruggiero, James Vincent Bracco, and Rodini. The fifth and eleventh claims are dismissed as against Attanasio. The seventh through eleventh claims are dismissed as against Infanti. The eleventh claim is dismissed as against Rastelli, Massino, and Spero. The fourth through tenth claims for relief in the original Complaint are dismissed as against Sabella.

### The 1962(d) Claim

The thirteenth claim for relief alleges that the defendants have conspired and are currently conspiring to violate 18 U.S.C. §§ 1962(a) & 1962(c) in violation of 18 U.S.C. § 1962(d). The thirteenth claim further alleges that, by reason of the conspiracy, the United States has been injured in an amount in excess of $300,000 and continues to be damaged and hurt by the racketeering acts alleged in the Amended Complaint. The twelfth claim for relief of the original Complaint contains an identical conspiracy allegation.

 The claim based on conspiracy is insufficient under Rule 8, Fed.R.Civ.P., and fails to state a claim under Rule 12(b)(6), Fed.R.Civ.P. Conclusory allegations or a "bare bones statement" of conspiracy will not withstand a motion to dismiss, and sufficient facts must be alleged to allow the defendant to form a response. *See Ostrer v. Aronwald*, 567 F.2d 551, 553 (2d Cir.

1977) (*per curiam*); *Heart Disease Research Foundation v. General Motors Corp.*, 463 F.2d 98, 100 (2d Cir.1972); *Waller v. Butkovich*, 584 F.Supp. 909, 931 (M.D.N.C.1984); *Cairo v. Skow*, 510 F.Supp. 201, 206 (E.D.Wisc.1981); 2A J. Moore, J. Lucas, G. Grotheer, *Moore's Federal Practice* ¶ 8.17[5] at 8.123 (2d ed. 1987); 5 C. Wright & A. Miller, *Federal Practice & Procedure*, § 1233 at 181 (1969). These principles are equally applicable to RICO cases, in which plaintiffs are required to "provide some factual basis for the legal conclusion that a conspiracy existed." *Andreo v. Friedlander, Gaines, Cohen, Rosenthal & Rosenberg*, 660 F.Supp. 1362, 1372 (D.Conn.1987); *see Alfaro v. E.F. Hutton & Co.*, 606 F.Supp. 1100, 1117–18 (E.D.Pa.1985).

■■■■ Essential to a conspiracy claim is an allegation that the defendant was party to an unlawful agreement. *Waller v. Butkovich*, 584 F.Supp. at 931; *Schneider v. Colegio de Abogados de Puerto Rico*, 546 F.Supp. 1251, 1263 (D.P.R.1982). An allegation of a RICO conspiracy will also be insufficient if it fails to allege an agreement to engage in criminal activity. *Laterza v. American Broadcasting Co.*, 581 F.Supp. 408, 413 (S.D.N.Y.1984); *In re Sattler's, Inc.*, 73 B.R. 780, 789 (Bankr.S.D. N.Y.1987).

■■■■ In the Second Circuit, a required element of a RICO conspiracy is that the defendant himself have agreed to commit two or more predicate acts. *United States v. Teitler*, 802 F.2d 606, 613 (2d Cir.1986); *United States v. Ruggiero*, 726 F.2d 913, 921 (2d Cir.), *cert. denied sub nom. Rabito v. United States*, 469 U.S. 831, 105 S.Ct. 118, 83 L.Ed.2d 60 (1984); *see United States v. Persico*, 832 F.2d 705, 713 (2d Cir.1987). Although the Amended Complaint has alleged the commission of two or more predicate acts by some, but not all, defendants, the commission of the acts is distinct from an agreement to commit them, and a violation of § 1962(d) requires different proof from a violation of § 1962(c). *United States v. Benevento*, 836 F.2d 60, 73 (2d Cir.1987); *see United States v. Castellano*, 610 F.Supp. 1359,

1394–95 (S.D.N.Y.1985) (participation in enterprise not the same as conspiracy). The RICO conspiracy claim in the instant action is insufficient because it does not allege an agreement by each defendant to commit two predicate acts.

■■■■ Moreover, although the thirteenth claim for relief broadly refers to a conspiracy to violate §§ 1962(a) & (c), it then seems to limit the conspiracy to acts which have caused monetary and other unspecified damage to the United States. Whether the conspiracy is intended to be limited to the bid-rigging violations alleged in the Amended Complaint is not clear and the nature of the conspiracy is not adequately pleaded under Rule 8, Fed.R.Civ.P.

The thirteenth claim for relief is therefore dismissed as to all defendants. The twelfth claim for relief in the original Complaint is dismissed as to Sabella. Serving the Amended Complaint on Sabella so as to assert the thirteenth claim would also be futile.

### Due Process, Ex Post Facto Laws, Venue

Riela and Joseph Bonanno argue that the instant action violates their due process rights in light of Riela's and Bonanno's age and mental and physical conditions and the prohibition against *ex post facto* laws. Riela and Bonanno also argue that venue in the Eastern District of New York is improper. The Court need not address these arguments because the Amended Complaint is being dismissed as against Riela and Joseph Bonanno. The remaining defendants have not raised the same due process, *ex post facto*, and improper venue arguments.

### THE APPROPRIATENESS OF THE RELIEF REQUESTED

The defendants have also moved to dismiss the Amended Complaint because it seeks inappropriate relief. Challenging both the constitutionality of and statutory authority for the relief requested, the defendants argue that the injunctive relief sought would violate their constitutional

right of association, that the "divestiture" of property interests requested would amount to an improper forfeiture, that the appointment of receivers for the properties and businesses sought to be divested is unnecessary, that divestiture would impinge on the rights of third parties, that Rodini's pension benefits may not be "forfeited," that the government lacks standing to seek monetary damages under 18 U.S.C. § 1964(c), and that forfeiture of real property is not available under 18 U.S.C. § 1955(d). The defendants also contend that the divestiture relief sought by the government transforms this action into a criminal proceeding in which the Court may not draw adverse inferences from the defendants' invocation of the Fifth Amendment privilege against self-incrimination.

The Court holds that, although some of the defendants' arguments may ultimately have merit, the defendants' challenges to the government's request for relief do not provide grounds for dismissal of the Amended Complaint, except to the extent it seeks monetary damages.

### *Injunctive Relief*

■ The Amended Complaint seeks a permanent injunction prohibiting all of the defendants from "associating with any other of the defendants herein for any business or commercial purpose for five years." The government's request for a preliminary injunction similarly seeks an order "[r]estraining and enjoining the individual defendants herein from associating together for any business or commercial purpose." The government also seeks both permanent and preliminary relief enjoining the defendants from further participation in the affairs of the Bonanno Family and from committing acts of racketeering as defined in 18 U.S.C. § 1961 and violations of 18 U.S.C. §§ 891 *et seq.* & 1955 and N.Y.Pen.L. §§ 190.40 *et seq.* & 225.00–225.40.

Section 1964(a) authorizes the district courts to:

prevent and restrain violations of section 1962 of this chapter by issuing appropriate orders, including, but not limited to:

ordering any person to divest himself of any interest, direct or indirect, in any enterprise; imposing reasonable restrictions on the future activities or investments of any person, including, but not limited to, prohibiting any person from engaging in the same type of endeavor as the enterprise engaged in, the activities of which affect interstate or foreign commerce; or ordering dissolution or reorganization of any enterprise, making due provision for the rights of innocent persons.

The Court thus has the power under RICO to enter reasonable injunctions against RICO violators restricting their future business activities. Congress intended the courts to grant injunctive relief to prevent RICO violators from returning to a particular type of organization or certain lines of business "to corrupt anew." 116 Cong. Rec. 592 (1970) (remarks of Sen. McClellan); 115 Cong.Rec. 9568 (1969) (remarks of Sen. McClellan); Senate Report at 82.

■ The injunctive relief requested differs from that specifically contemplated in the statute and RICO's legislative history in that, rather than enjoining the defendants from engaging in particular business activities or enterprises, it would enjoin association among specific individuals. Spero argues that an injunction prohibiting association among the defendants for any business or commercial purpose would violate the defendants' constitutional rights to "freedom of intimate association" as well as "freedom of expressive association." *See Roberts v. United States Jaycees*, 468 U.S. 609, 617–18, 104 S.Ct. 3244, 3249–50, 82 L.Ed.2d 462 (1984). The government responds that the association sought to be enjoined is not constitutionally protected, that the injunction would further a compelling state interest, and that the injunction requested is sufficiently narrow in subject matter and duration so as not to interfere with protected constitutional rights.

The defendants may well be able to raise a weighty constitutional challenge to the injunctive relief sought by the government. The challenge, however, is premature at this stage in the proceedings. The avail-

ability of any injunctive relief will depend on the government's proof, and the Court has broad equitable powers under 18 U.S.C. § 1964 to fashion any injunctive relief to avoid constitutional infirmities.

■■■ Even if the relief as demanded in the Amended Complaint is inappropriate, "a complaint should not be dismissed for legal insufficiency except where there is a failure to state a claim upon which *some* relief, not limited by the request in the complaint, can be granted." *Norwalk CORE v. Norwalk Redevelopment Agency*, 395 F.2d 920, 925–26 (2d Cir.1968); *Doe v. United States Department of Justice*, 753 F.2d 1092, 1104 (D.C.Cir.1985); *Lumbard v. Maglia, Inc.*, 621 F.Supp. 1529, 1537 (S.D.N.Y.1985). *Accord Holt Civic Club v. City of Tuscaloosa*, 439 U.S. 60, 66, 99 S.Ct. 383, 387, 58 L.Ed.2d 292 (1978) ("a meritorious claim will not be rejected for want of a prayer for appropriate relief"); *United States v. Ianniello*, 646 F.Supp. 1289, 1290 (S.D.N.Y.1986), *aff'd*, 824 F.2d 203 (2d Cir.1987); *see* Rule 54(c), Fed.R.Civ. P. ("every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in the party's pleadings"). The possible constitutional defects of the injunctive relief requested therefore do not constitute grounds for dismissing the Amended Complaint.

### *Divestiture*

■■■ Defendant Spero argues that the fourth through eleventh claims for relief, alleging violations of 18 U.S.C. § 1962(a), must be dismissed because they seek relief not authorized under RICO. Spero argues that those claims, while purporting to form the basis for the civil remedy of "divestiture," in actuality form the basis for the government's request for the criminal sanction of "forfeiture" which would be unauthorized by statute and unconstitutional in the context of this civil action. In addition, Spero has filed a motion *in limine* requesting a ruling that the Court will not draw an adverse inference if

Spero asserts his Fifth Amendment privilege against self-incrimination because the criminal nature of the sanctions sought by the government in this action would make such an inference impermissible.

As stated above, a court need not normally address, in the context of a motion to dismiss, the form and scope of the ultimate relief to be granted in an action. The Court, however, will address Spero's challenge to the "divestiture" relief sought by the government because the Court is persuaded that Spero and his codefendants, in deciding whether to assert their Fifth Amendment privileges, should be aware of the potential scope of the "divestiture" relief which the Court would entertain and the potential adverse consequences of the assertion of the privilege.

### *The "Divestiture" Claims*

The fourth through eleventh claims for relief are each entitled "18 U.S.C. § 1962(a)—Divestiture." Those claims allege that defendants have violated § 1962(a) because they have "unlawfully received and currently receive income, directly and indirectly, from the pattern of illegal and racketeering activity alleged above, and used and invested, and currently use and invest, directly and indirectly, part of such income, and the proceeds of such income, in the acquisition of an interest in, and the establishment and operation of" the following enterprises engaged in and affecting interstate commerce: the 4th Street Gambling Enterprise, the Myrtle Gambling Enterprise, the J & S Cake Gambling Enterprise, the Hudson Plaza Hotel, the Newark Airport Motel Enterprise, the Belleville Motor Lodge Enterprise, the Big Apple Enterprise, and the Casa Bella Enterprise.

The section of the Amended Complaint's prayer for permanent relief entitled "Divestiture" is based on the fourth through eleventh (§ 1962(a)) claims as well as the first (§ 1962(c) violations through the Bonanno Family Enterprise) and thirteenth (§ 1962(d) conspiracy) claims.[27] The Divestiture section seeks an order that the de-

---

27. As discussed above, the eleventh and thirteenth claims for relief are being dismissed for reasons unrelated to the nature of the relief sought.

fendants divest themselves of any interest in the following businesses: 4th Street Cafe, 405 Myrtle Avenue, J & S Cake, Hudson Plaza Motel, Newark Airport Motel, Belleville Motor Lodge, Big Apple Taxi Two Way Radio Co., and Casa Bella Restaurant. The Amended Complaint requests that all proceeds from the divestiture of defendants' interests be placed in funds to be established for the victims of racketeering acts alleged in this action, with the amount not dispensed in such fashion to be deposited in the United States Treasury. The government's suggested method for disposing of the divestiture proceeds, however, is not an exclusive remedy. The Amended Complaint states that the proceeds may be disposed of "as the court in its equitable powers otherwise decrees to be fair and just" and also states that the amount not paid out to racketeering victims may be "otherwise awarded or used in a manner deemed appropriate by the court."

The Amended Complaint's prayer for preliminary relief requests an order enjoining the defendants from transferring any interest in the enterprises sought to be divested and the appointment of receivers to oversee the operation of the businesses, buildings, and properties at issue. These requests for preliminary relief are also based on the Amended Complaint's first, fourth through eleventh, and thirteenth claims for relief.

Spero argues that the government's request that the proceeds from the sale of defendants' interests in the enterprises at issue be paid either to racketeering victims or to the U.S. Treasury transforms the relief denominated "divestiture" into a forfeiture sanction. Spero distinguishes divestiture, where the owner of the property retains the proceeds of its sale, from forfeiture, where the proceeds are retained by the government. *See Ballentine's Law Dictionary* (3d ed. 1969) (defining forfeiture as "a divestiture of property without compensation, in consequence of a default or an offense"); *United States v. Eight (8) Rhodesian Stone Statues,* 449 F.Supp. 193, 195 n. 1 (C.D.Cal.1978) ("The term 'forfeiture' is best defined as the divestiture without compensation of property used in a manner contrary to the laws of the sovereign.")

Spero maintains that the language of the RICO statute, as well as its legislative history, mandate the conclusion that forfeiture is solely a criminal sanction, available only after a criminal conviction, and that the civil remedy of divestiture should be modelled on the remedy of divestiture in antitrust actions in which the defendant is compensated for the loss of his property interest. Spero further argues that divestiture in which the defendant retains the proceeds of the sale would accomplish the remedial purpose of a civil RICO action by eliminating the racketeer's interest in or control of an enterprise without amounting to an unconstitutional punitive sanction.

The government argues that it is seeking an equitable remedy akin to the remedy of disgorgement available in civil securities law actions whereby the defendant is deprived of his ill-gotten gains. The government maintains that antitrust-style divestiture is only one form of equitable relief which the court may grant in civil RICO actions, that RICO should be liberally construed to accomplish its remedial purposes, and that the courts are given wide discretion in fashioning appropriate equitable relief.

Spero replies that disgorgement in a RICO case would amount to a forfeiture which is specifically categorized as a criminal sanction under § 1963 and therefore excluded as a civil remedy. Spero also maintains that the government's request for relief exceeds that which would be available under a disgorgement order since the government is seeking not only any property interests obtained through racketeering activities but also any augmentation of that property interest through legitimate business activities.

For the reasons set forth below, the Court concludes that both Spero and the government are to some extent correct in their analyses of the relief available to the government in a civil RICO action. The Court holds that, although the government

would not necessarily be entitled to all the "divestiture" relief it seeks, the government's request for "divestiture" does not in itself transform this case into a criminal action because it leaves to the Court's discretion the fashioning of equitable relief which would further the remedial purposes of civil RICO without amounting to a punitive sanction. The Court further concludes that an adverse inference may be drawn from a defendant's assertion of his Fifth Amendment privilege because this action is civil and not criminal in nature.

*The Statutory Bases for Forfeiture and Divestiture*

Section 1963 of RICO entitled "Criminal penalties" provides that, in addition to being subject to a fine and imprisonment, a violator of § 1962 "shall forfeit to the United States":

> (1) any interest the person has acquired or maintained in violation of section 1962;
>
> (2) any—
>
>> (A) interest in
>>
>> (B) security of;
>>
>> (C) claim against; or
>>
>> (D) property or contractual right of any kind affording a source of influence over;
>
> any enterprise which the person has established, operated, controlled, conducted, or participated in the conduct of in violation of section 1962; and
>
> (3) any property constituting, or derived from, any proceeds which the person obtained, directly or indirectly, from racketeering activity or unlawful debt collection in violation of section 1962.

The court is instructed to order forfeiture as part of the defendant's sentence and may, in lieu of the specified fine, order the defendant to pay a fine of up to twice the amount of the proceeds or profits which the defendant received from an offense.

This section was amended by the Comprehensive Crime Control Act of 1984. The section, as originally enacted, provided in relevant part:

> (a) Whoever violates any provision of section 1962 of this chapter shall be fined not more than $25,000 or imprisoned not more than twenty years, or both, and shall forfeit to the United States (1) any interest he has acquired or maintained in violation of section 1962, and (2) any interest in, security of, claim against, or property or contractual right of any kind affording a source of influence over, any enterprise which he has established, operated, controlled, conducted, or participated in the conduct of, in violation of section 1962.

The Attorney General is authorized to seize the property to be forfeited upon "conviction of a person under this section."

Section 1964 of RICO entitled "Civil remedies," provides in part:

> (a) The district courts of the United States shall have jurisdiction to prevent and restrain violations of section 1962 of this chapter by issuing appropriate orders, *including, but not limited to:* ordering any person to divest himself of any interest, direct or indirect, in any enterprise; imposing reasonable restrictions on the future activities or investments of any person, including, but not limited to, prohibiting any person from engaging in the same type of endeavor as the enterprise engaged in, the activities of which affect interstate or foreign commerce; or ordering dissolution or reorganization of any enterprise, making due provision for the rights of innocent persons.

(emphasis added)

As the Supreme Court has stated: "The legislative history clearly demonstrates that the RICO statute was intended to provide new weapons of unprecedented scope for an assault upon organized crime and its economic roots." *Russello v. United States*, 464 U.S. 16, 26, 104 S.Ct. 296, 302, 78 L.Ed.2d 17 (1983). Congress was especially concerned with organized crime's infiltration of legitimate businesses: "[RICO] is designed to prevent organized criminals from infiltrating legitimate commercial organizations with the proceeds of their criminal activities or with violent and corrupt methods of operation, and to remove them and their influence from such enterprises once they have been infiltrated." House

Hearings at 106 (statement of Sen. McClellan); see, e.g., Statement of Findings and Purpose, Pub.L. 91–452, 84 Stat. 922 (1970); Senate Report at 76; 115 Cong.Rec. 5874 (1969) (remarks of Sen. McClellan); 116 Cong.Rec. 602 (1970) (remarks of Sen. Hruska).

Senator Byrd emphasized that the infiltration of legitimate businesses by organized crime posed two types of dangers:

First, the economic strength of the underlying illegal operations of organized crime is perpetuated and made more profitable if tainted proceeds can be safely invested in legitimate enterprises, even if those enterprises are operated in a lawful manner.

Second, the free channels of trade are threatened by organized crime's propensity to obtain for itself monopoly control of its areas by whatever means are available, including brutal and strong-arm tactics.

116 Cong.Rec. 607 (1970).

Congress considered the pre-RICO sanctions and remedies available for use against organized crime to be "unnecessarily limited in scope and impact" and emphasized that RICO would provide "enhanced sanctions and new remedies." Statement of Findings and Purpose, Pub.L. 91–452, 84 Stat. 922 (1970); Senate Report at 78 ("our present laws are inadequate to remove criminal influences from legitimate endeavor organizations"); House Hearings at 106–07 (statement of Sen. McClellan) (existing criminal laws of little value in combatting organized crime due to procedural constraints and limited remedies). The point was repeatedly made that conviction and imprisonment of the perpetrators of organized crime were not sufficient to deter or curtail organized criminal activities since the incarcerated individuals were merely replaced with other members of the criminal enterprise while the economic base of the enterprise remained untouched. Senate Report at 78; 115 Cong.Rec. 9567 (1969) (remarks of Sen. McClellan); 116 Cong.Rec. 591, 607, 35193, 36296 (1970) (remarks of Sen. McClellan, Sen. Byrd, Rep. Poff, Sen. Dole); House Hearings at 107

(statement of Sen. McClellan). As stated in the Senate Report:

What is needed here ... are new approaches that will deal not only with individuals, but also with the economic base through which those individuals constitute such a serious threat to the economic well-being of the Nation. In short, an attack must be made on their source of economic power itself, and the attack must take place on all available fronts.

Senate Report at 79.

RICO's new weapons against the economic base of organized crime included both the penal sanctions of fines, imprisonment, and forfeiture under § 1963 and the civil remedies under § 1964. Section 1963 differs from previous forfeiture statutes in that it imposes forfeiture "directly on an individual as part of a criminal prosecution rather than in a separate proceeding in rem against the property subject to forfeiture." United States v. Huber, 603 F.2d 387, 396 (2d Cir.1979), cert. denied, 445 U.S. 927, 100 S.Ct. 1312, 63 L.Ed.2d 759 (1980). As noted in RICO's legislative history, in personam forfeiture was the first of its kind since Congress abolished forfeiture of estate and corruption of blood in 1790. Senate Report at 79–80 (citing Department of Justice comments). See 116 Cong.Rec. 27740 (1970) (statement of Rep. Steiger) ("Criminal forfeiture, which was used extensively in England and to a limited degree in the colonies but has found virtually no application in the United States, would punish an [sic] criminal found to have violated [RICO] appropriately by forfeiting his ill-acquired business interests"). Congress viewed criminal forfeiture as an innovative and powerful weapon against organized crime. 116 Cong.Rec. 35193 (1970) (remarks of Rep. Poff) ("The use of criminal forfeiture ... represents an innovative attempt to call on our common law heritage to meet an essentially modern problem"); accord Senate Report at 79.

The reach of the forfeiture sanction under § 1963 has been held to be very broad, reaching a defendant's entire interest in a racketeering enterprise even if

there is no proof that all of the property forfeited is tainted by criminal activity. *United States v. Walsh,* 700 F.2d 846, 857 (2d Cir.), *cert. denied,* 464 U.S. 825, 104 S.Ct. 96, 78 L.Ed.2d 102 (1983). The Eighth Amendment may circumscribe to some extent the scope of a forfeiture order, *see id.; United States v. Huber,* 603 F.2d at 397, but the property forfeited need only be "roughly proportional" to the offense. *United States v. Lizza Industries, Inc.,* 775 F.2d 492, 498 (2d Cir.1985), *cert. denied,* 475 U.S. 1082, 106 S.Ct. 1459, 89 L.Ed.2d 716 (1986). As the United States Court of Appeals for the Second Circuit has stated: "Forfeiture under RICO is a punitive, not a restitutive, measure." *Id.*

RICO's legislative history indicates that Congress envisioned "forfeiture" as a criminal penalty separate and distinct from the civil equitable remedies available under § 1964. 116 Cong.Rec. 591, 18939 (1970) (remarks of Sen. McClellan) (RICO "uses three primary devices ... criminal forfeiture, civil remedies which have proven successful in the antitrust area, and a number of civil investigative procedures"); 116 Cong.Rec. 35227 (1970) (remarks of Rep. Steiger) (RICO "provided two types of remedies for violations of its provisions: the criminal penalties of imprisonment, fine, and forfeiture, and the civil, equitable remedies brought to their fullest development under the antitrust laws"). Senator McClellan described the forfeiture sanction as follows: "Since the convict would not be compensated for the forfeited interest, the forfeiture would be a criminal one, and could be applied only if the individual's guilt were proven beyond a reasonable doubt in a criminal trial." House Hearings at 107.

██ The equitable remedies under § 1964, on the other hand, were explicitly intended to be remedial and not punitive and were therefore made available in civil actions. House Hearings at 107 (statement of Sen. McClellan); 115 Cong.Rec. 9568 (1969) (remarks of Sen. McClellan); Senate Report at 81, 82, 160. The Supreme Court has described the purpose of RICO's civil remedies as follows: "[T]he civil remedies could be useful in eradicating organized crime from the social fabric, whether the enterprise be ostensibly legitimate or admittedly criminal. The aim is to divest the association of the fruits of its ill-gotten gains." *United States v. Turkette,* 452 U.S. 576, 585, 101 S.Ct. 2524, 2530, 69 L.Ed. 2d 246 (1981).

The remedies of divestiture, injunction, reorganization, and dissolution specifically enumerated in § 1964 were derived from "time-tested antitrust remedies." 116 Cong.Rec. 602 (1970) (remarks of Sen. Hruska). *See* Senate Report at 81 (RICO "brings to bear on the infiltration of organized crime into legitimate business or other organizations the full panoply of civil remedies ... now available in the antitrust area"); 115 Cong.Rec. 9567 (1969) (remarks of Sen. McClellan) ("The bill draws heavily upon the remedies developed in the field of antitust"); House Hearings at 157 (testimony of Attorney General Mitchell) ("the tried and tested remedies of the antitrust laws, including injunctions and divestiture"); House Hearings at 171 (comments of Department of Justice) ("a variety of civil remedies closely modelled upon the antitrust laws"). Congress intended that remedies developed in the antitrust field be used to remove members of organized crime from particular organizations and to prevent them from returning to regain control. 115 Cong.Rec. 9568 (1969) (remarks of Sen. McClellan); 116 Cong.Rec. 607, 18940, 27740 (1970) (remarks of Sen. Byrd, Sen. McClellan, statement of Rep. Steiger).

As Congress recognized, the Supreme Court has upheld divestiture as an equitable remedy in civil actions. *United States v. E.I. Du Pont de Nemours & Co.,* 366 U.S. 316, 326, 81 S.Ct. 1243, 1250, 6 L.Ed.2d 318 (1961) ("Divestiture is itself an equitable remedy designed to protect the public interest"). *See* Senate Report at 81; 115 Cong.Rec. 9567 (1969) (remarks of Sen. McClellan). Divestiture may be an appropriate remedy even if it results in severe economic hardship. *United States v. E.I. Du Pont de Nemours & Co.,* 366 U.S. at 326, 327, 81 S.Ct. at 1250 ("courts are authorized, indeed required, to decree relief effective to redress the violations, whatev-

er the adverse effect of such a decree on private interests"; if "complete divestiture is a necessary element of effective relief, the Government cannot be denied the ... remedy because economic hardship, however severe, may result"). As stated in *Utah Public Service Commission v. El Paso Natural Gas Co.*, 395 U.S. 464, 472, 89 S.Ct. 1860, 1864, 23 L.Ed.2d 474 (1969), "the pinch on private interest is not relevant to fashioning an antitrust decree, as the public interest is our sole concern."

Spero has pointed out that divestiture in the area of antitrust requires the defendant to give up his interest in a commercial enterprise, normally through the sale of that interest. *See Utah Public Service Commission v. El Paso Natural Gas Co.*, 395 U.S. at 472, 89 S.Ct. at 1864 (contemplating a "cash sale"). The defendant receives compensation for the loss of the interest although he may suffer some economic hardship as a result of the divestiture. The government has not cited any antitrust cases to the Court in which the defendant was required to divest himself of his interest in a commercial enterprise without receiving any compensation, a remedy which Spero argues would be tantamount to a forfeiture.

Congress also expected that a RICO defendant could be required, in a civil action, to sell his interest in an enterprise. As stated by Representative Steiger:

> Using [RICO's] civil provisions, the government, by providing [sic] by a preponderance of the evidence that a racketeer had used a pattern of specified felonies to acquire or operate an interstate business, or had purchased his controlling interest with the proceeds of his pattern of felonies, could obtain a court order requiring the racketeer to sell his interest in the business and to refrain from re-entering the enterprise either directly or through nominees.

House Hearings at 520. The statute's legislative history, however, does not contain any references to "disgorgement" as a civil remedy and there is no indication that Congress specifically envisioned a civil equitable RICO remedy which would deprive a defendant of his interest without any compensation.

Nevertheless, Congress did not intend the equitable remedies listed in § 1964 to be exclusive. The statute expressly authorizes the courts to issue "appropriate orders, including, but not limited to" the listed equitable remedies. The legislative history also makes it clear that antitrust remedies were not the only remedies available under § 1964. As stated by Senator McClellan:

> The many references to antitrust cases are necessary because the particular equitable remedies desired have been brought to their greatest development in this field, and in many instances they are the primary precedents for the remedies in this bill. Nor do I mean to limit the remedies available to those which have already been established. The ability of our chancery courts to formulate a remedy to fit the wrong is one of the great benefits of our system of justice. This ability is not hindered by the bill.

115 Cong.Rec. 9567 (1969). *See* Senate Report at 79 (RICO envisions a "civil law approach of equitable relief broad enough to do all that is necessary to free the channels of commerce from all illicit activity").

The courts are given broad powers in fashioning equitable relief to further § 1964's remedial purposes:

> Nevertheless, it must be emphasized that these remedies are not exclusive, and that [RICO] seeks essentially an economic, not a punitive goal. However remedies may be fashioned, it is necessary to free the channels of commerce from predatory activities, but there is no intent to visit punishment on any individual; the purpose is civil. Punishment as such is limited to the criminal remedies, noted above.

Senate Report at 81.

Again, the Senate Report emphasized the flexible nature of the relief authorized by § 1964:

> Although certain remedies are set out, the list is not exhaustive, and the only limit on remedies is that they accomplish the aim set out of removing the corrupt-

ing influence and make due provision for the rights of innocent persons.

Senate Report at 160; *accord* H.R.Rep. No. 1549, 91st Cong., 2d Sess. 57, 1970 U.S. Code Cong. & Admin.News 4007, 4034.

Moreover, the RICO statute in general is to "be liberally construed to effectuate its remedial purposes." Pub.L. 91–452, § 904(a), 84 Stat. 947 (1970); *Sedima, S.P. R.L. v. Imrex Co.*, 473 U.S. 479, 498, 105 S.Ct. 3275, 3286, 87 L.Ed.2d 346 (1985). As emphasized in *Sedima:* "Indeed, if Congress' liberal-construction mandate is to be applied anywhere, it is in § 1964, where RICO's remedial purposes are most evident." 473 U.S. at 492 n. 10, 105 S.Ct. at 3283 n. 10.

The following principles may thus be gleaned from an examination of RICO's criminal penalties and civil remedies provisions and the legislative history of the statute: Both types of remedies were intended to provide forceful and innovative weapons against organized crime's infiltration and control of commercial enterprises. Forfeiture was viewed as a punitive sanction available only in criminal RICO proceedings. RICO's civil remedies were drawn from established civil antitrust remedies, including divestiture through which a defendant could be ordered to dispose of his interest in a particular enterprise receiving compensation in return, although perhaps sustaining a loss. Finally, the civil remedies listed in § 1964 were intended to be illustrative and not exclusive, and the courts were given broad powers to fashion appropriate equitable relief to further the remedial purposes of that section.

█ Therefore, while the "divestiture" relief sought by the government in this action is not expressly authorized by the RICO statute because it does not contemplate compensation to the defendant, such relief would be authorized to the extent that it is an equitable remedy which furthers § 1964's remedial goals.

*Disgorgement*

█ The government argues that the remedy it seeks—"divestiture" of the defendants' interests in specified enterprises with the proceeds to be turned over to racketeering victims or to the U.S. Treasury—does not amount to a "forfeiture" but instead is in the nature of disgorgement. Disgorgement has been found to be an appropriate, non-punitive, ancillary equitable remedy in the securities and commodities law area which deprives wrongdoers of their ill-gotten gains and deters future violations. *See, e.g., S.E.C. v. Tome*, 833 F.2d 1086, 1096 (2d Cir.1987); *C.F.T.C. v. British American Commodity Options Corp.*, 788 F.2d 92 (2d Cir.), *cert. denied sub nom. Forma v. C.F.T.C.*, —— U.S. ——, 107 S.Ct. 186, 93 L.Ed.2d 120 (1986); *S.E.C. v. Commonwealth Chemical Securities, Inc.*, 574 F.2d 90 (2d Cir. 1978); *S.E.C. v. Manor Nursing Centers, Inc.*, 458 F.2d 1082 (2d Cir.1972). A disgorgement order requires the violator to give up or disgorge the profits made from his unlawful acts.

█ The authority to order disgorgement derives from the broad equitable powers given courts under the securities laws "to provide such remedies as are necessary to make effective the congressional purpose." *J.I. Case Co. v. Borak*, 377 U.S. 426, 433, 84 S.Ct. 1555, 1560, 12 L.Ed.2d 423 (1964). The fashioning of equitable remedies under the securities laws lies within the "sound discretion" of the court. *Mills v. Electric Auto–Lite Co.*, 396 U.S. 375, 386, 90 S.Ct. 616, 622, 24 L.Ed.2d 593 (1970). A court exercising the broad equitable powers of RICO's § 1964 has similar, if not wider, latitude in designing appropriate relief. *See United States v. Ianniello*, 824 F.2d 203, 208 (2d Cir.1987); *United States v. Local 560*, 780 F.2d 267, 295–96 (3d Cir.1985), *cert. denied*, 476 U.S. 1140, 106 S.Ct. 2247, 90 L.Ed.2d 693 (1986). As stated in *Hecht Co. v. Bowles*, 321 U.S. 321, 329–30, 64 S.Ct. 587, 592, 88 L.Ed. 754 (1944):

The essence of equity jurisdiction has been the power of the Chancellor to do equity and to mould each decree to the necessities of the particular case. Flexibility rather than rigidity has distinguished it. The qualities of mercy and practicality have made equity the instru-

ment for nice adjustment and reconciliation between the public interest and private needs as well as between competing private claims.

The Court holds that, if the government succeeds in this action in proving that the defendants have violated RICO, it would be within the broad equitable powers of the Court to fashion relief requiring the defendants to disgorge any ill-gotten gains. Since the government bases its claim for disgorgement relief on alleged §§ 1962(c), as well as § 1962(a), violations, the defendants could conceivably be ordered to disgorge both the proceeds of unlawful activities which they have allegedly invested in the businesses at issue as well as any proceeds derived from the unlawful conduct of or participation in the enterprise's affairs. Any such relief would be dependent upon the government's ability to prove that the proceeds sought to be disgorged were "ill-gotten" under the RICO statute.

 The government would not be entitled to an order depriving, without compensation, the defendants of their entire interest in the enterprises at issue regardless of whether the property interest is tainted.[28] *See C.F.T.C. v. British American Commodity Options Corp.,* 788 F.2d 92, 93–94 (2d Cir.) (court should try to separate legally and illegally derived profits unless entire property interest is attributable to unlawful activity), *cert. denied sub nom. Forma v. C.F.T.C.,* ─── U.S. ───, 107 S.Ct. 186, 93 L.Ed.2d 120 (1986); *S.E.C. v. Manor Nursing Centers, Inc.,* 458 F.2d 1082, 1104 (2d Cir.1972) (disgorgement must be tailored so as not to amount to a penalty assessment); *S.E.C. v. Blatt,* 583 F.2d 1325, 1335 (5th Cir.1978) (disgorgement is a remedial remedy which must be limited to the amount of wrongful profits with interest). Such relief

would amount to a forfeiture and would be unauthorized under RICO's civil remedies provision.

 It should be noted that the government need not demonstrate that specific individuals have been damaged by the defendants' acts to warrant a disgorgement order. Although it may prove appropriate to order restitution of certain sums to "victims,"[29] the primary purpose of disgorgement is to prevent unjust enrichment regardless of whether any victims are entitled to damages. *S.E.C. v. Tome,* 833 F.2d 1086, 1096 (2d Cir.1987) (citing *S.E.C. v. Commonwealth Chemical Securities, Inc.,* 574 F.2d 90 (2d Cir.1978), and *S.E.C. v. Blavin,* 760 F.2d 706 (6th Cir.1985)). Thus, the government's request that any ill-gotten gains not distributed to racketeering victims be paid to the U.S. Treasury does not transform this action into an unauthorized criminal RICO action.

*The Invocation of the Fifth Amendment Privilege*

It is well-established that the Fifth Amendment privilege against self-incrimination may be invoked in a civil proceeding. *Pillsbury Co. v. Conboy,* 459 U.S. 248, 263–64, 103 S.Ct. 608, 617–18, 74 L.Ed.2d 430 (1983); *Lefkowitz v. Turley,* 414 U.S. 70, 77, 94 S.Ct. 316, 322, 38 L.Ed.2d 274 (1973); *Kastigar v. United States,* 406 U.S. 441, 444–45, 92 S.Ct. 1653, 1656, 32 L.Ed.2d 212 (1972). If the privilege is invoked in a civil proceeding, however, the trier of fact may draw an adverse inference from the invocation. *Baxter v. Palmigiano,* 425 U.S. 308, 318, 96 S.Ct. 1551, 1558, 47 L.Ed. 2d 810 (1976); *Brink's, Inc. v. City of New York,* 717 F.2d 700, 710 (2d Cir.1983). *Contrast Griffin v. California,* 380 U.S.

---

**28.** As is evident from the legislative history of RICO discussed above, the government, if it proves RICO violations, would be entitled to a divestiture order requiring the defendants to separate themselves entirely from specific enterprises. Such an order would not amount to a punitive sanction. *United States v. E.I. Du Pont de Nemours & Co.,* 366 U.S. 316, 326, 81 S.Ct. 1243, 1250, 6 L.Ed.2d 318 (1961); *Schine Chain Theatres, Inc. v. United States,* 334 U.S. 110, 128, 68 S.Ct. 947, 957, 92 L.Ed. 1245 (1948).

**29.** Spero also argues that a victims' fund is an improper remedy in a civil RICO action brought by the government. The Court need not anticipate whether such a remedy will ultimately prove appropriate in this action and will not address this claim in the context of a motion to dismiss.

609, 615, 85 S.Ct. 1229, 1233, 14 L.Ed.2d 106 (1965) (adverse inference may not be drawn in criminal proceeding); *see also United States v. Robinson,* — U.S. —, —, 108 S.Ct. 864, 869, 99 L.Ed.2d 23 (1988) (silence may not be treated as substantive evidence of guilt in a criminal trial). Therefore, as long as the instant proceeding is a civil proceeding, the Court would be permitted to draw adverse inferences if the defendants refuse to testify or otherwise give evidence on Fifth Amendment grounds.

The government has chosen to bring the instant action under RICO's civil remedies provision. The fact that the government might have the option of pursuing RICO criminal proceedings against the same defendants does not transform this action into a criminal action. *Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 491, 492, 105 S.Ct. 3275, 3282, 3283, 87 L.Ed.2d 346 (1985); *In re Debs,* 158 U.S. 564, 15 S.Ct. 900, 39 L.Ed. 1092 (1895); *United States v. Ianniello,* 646 F.Supp. 1289, 1297 (S.D.N.Y. 1986), *aff'd,* 824 F.2d 203 (2d Cir.1987); *United States v. Cappetto,* 502 F.2d 1351, 1357 (7th Cir.1974), *cert. denied,* 420 U.S. 925, 95 S.Ct. 1121, 43 L.Ed.2d 395 (1975). On the other hand, the fact that the government has labelled this action a "civil" action is not determinative of whether it is in fact a civil or criminal proceeding as regards the Fifth Amendment privilege. *E.g., In re Gault,* 387 U.S. 1, 50, 87 S.Ct. 1428, 1455, 18 L.Ed.2d 527 (1967). The Court must look at the actual nature of the action to determine whether it should be deemed civil, criminal, or even quasi-criminal in regard to the repercussions of invoking the Fifth Amendment privilege.

Spero argues that this is a criminal or quasi-criminal action because the relief sought by the government amounts to forfeiture, a punitive sanction. Spero maintains that in view of the criminal nature of the relief sought, he is entitled to the same protections in invoking the Fifth Amendment to which he would be entitled in a criminal action. Spero bases this argument on *Boyd v. United States,* 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746 (1886), in which the Court held that a forfeiture action was in effect a criminal or quasi-criminal action and the Fifth Amendment mandated that the claimant of property could not be compelled to produce evidence under pain of losing the property.

It is not necessary to discuss what precedential value should be assigned to *Boyd, see Fisher v. United States,* 425 U.S. 391, 407, 96 S.Ct. 1569, 1579, 48 L.Ed.2d 39 (1976) ("Several of *Boyd's* express or implicit declarations have not stood the test of time"); *accord United States v. Ward,* 448 U.S. 242, 253, 100 S.Ct. 2636, 2643, 65 L.Ed.2d 742 (1980) [30], because, as discussed above, forfeiture is not a remedy contemplated by § 1964(a) and will not be ordered in this action. Rather, the Court will limit the relief it awards in this action, if any, to equitable remedies such as divestiture, disgorgement, and injunction.

The potential relief in this action is not tantamount to a punitive sanction. As set forth in the Supreme Court's decision in *United States v. Ward,* 448 U.S. 242, 248, 100 S.Ct. 2636, 2641, 65 L.Ed.2d 742 (1980) (cited with approval in *Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 489, 491, 105 S.Ct. 3275, 3281, 3282, 87 L.Ed.2d 346 (1985)) and reaffirmed in *Allen v. Illinois,* 478 U.S. 364, 106 S.Ct. 2988, 2992, 92 L.Ed.2d 296 (1986): "the question whether a particular statutorily defined penalty is civil or criminal is a matter of statutory construction." This action is brought pursuant to the civil remedies provision of RICO which Congress clearly intended to be remedial:

Subsection (a) contains broad remedial provisions for reform of corrupted organizations. Although certain remedies

---

**30.** The Court does note that *in rem* forfeiture actions are not inevitably deemed to be criminal actions. *Contrast United States v. One Assortment of 89 Firearms,* 465 U.S. 354, 104 S.Ct. 1099, 79 L.Ed.2d 361 (1984); *One Lot Emerald Cut Stones v. United States,* 409 U.S. 232, 93 S.Ct. 489, 34 L.Ed.2d 438 (1972) (*per curiam*);

*Calero–Toledo v. Pearson Yacht Leasing Co.,* 416 U.S. 663, 94 S.Ct. 2080, 40 L.Ed.2d 452 (1974), *with United States v. United States Coin & Currency,* 401 U.S. 715, 91 S.Ct. 1041, 28 L.Ed.2d 434 (1971); *One 1958 Plymouth Sedan v. Pennsylvania,* 380 U.S. 693, 85 S.Ct. 1246, 14 L.Ed.2d 170 (1965).

are set out, the list is not exhaustive, and the only limit on remedies is that they accomplish the aim set out of removing the corrupting influence and make due provision for the rights of innocent persons. Because the action is remedial, not punitive, the result in *One 1958 Plymouth Sedan v. Pennsylvania,* 380 U.S. 693 [85 S.Ct. 1246, 14 L.Ed.2d 170] (1965), would not obtain here. Senate Report at 160. *See United States v. Cappetto,* 502 F.2d 1351, 1357 (7th Cir. 1974), *cert. denied,* 420 U.S. 925, 95 S.Ct. 1121, 43 L.Ed.2d 395 (1975) ("Section 1964 provides for a civil action in which only equitable relief can be granted. The relief authorized by that section is remedial not punitive and is of a type traditionally granted by courts of equity.")

Nor is the instant case one in which " 'the statutory scheme [is] so punitive either in purpose or effect as to negate [the State's] intention' that the proceeding be civil." *Allen v. Illinois,* 106 S.Ct. at 2992 (quoting *United States v. Ward,* 448 U.S. at 248–49, 100 S.Ct. at 2641). Section 1964(a) authorizes the courts to fashion equitable relief appropriate to the particular circumstances. Two such types of relief are divestiture and disgorgement, both of which have been upheld as remedial, non-punitive, relief. *See, e.g., United States v. E.I. Du Pont de Nemours & Co.,* 366 U.S. 316, 326, 81 S.Ct. 1243, 1250, 6 L.Ed.2d 318 (1961); *United States v. Ianniello,* 824 F.2d 203, 208 (2d Cir.1987); *S.E.C. v. Manor Nursing Centers, Inc.,* 458 F.2d 1082, 1103–04 (2d Cir.1972). This action therefore truly is a civil action.

Adverse inferences from a party's invocation of his Fifth Amendment privilege have been held appropriate in civil disgorgement actions. *S.E.C. v. Tome,* 638 F.Supp. 629 (S.D.N.Y.1986); *S.E.C. v. Musella,* 578 F.Supp. 425 (S.D.N.Y.1984); *S.E.C. v. Scott,* 565 F.Supp. 1513 (S.D.N.Y. 1983), *aff'd per curiam sub nom. S.E.C. v. Cayman Islands Reinsurance Corp.,* 734 F.2d 118 (2d Cir.1984); *C.F.T.C. v. U.S.*

*Metals Depository Co.,* 468 F.Supp. 1149 (S.D.N.Y.1979). Moreover, the United States Court of Appeals for the Second Circuit has held that an adverse inference may be drawn from the assertion of the Fifth Amendment privilege in civil RICO actions brought by the government. *United States v. Ianniello,* 824 F.2d at 208.

■ Spero argues that an adverse inference should not be drawn because the United States government is a party to this action and has the power to facilitate the defendants' giving of evidence by granting them immunity from future prosecutions.[31] Spero overlooks the fact that *Baxter v. Palmigiano,* 425 U.S. 308, 317–18, 96 S.Ct. 1551, 1557–58, 47 L.Ed.2d 810 (1976), upheld the drawing of an adverse inference in prison disciplinary proceedings in which the State had not granted immunity to the prisoners. The cases listed in the previous paragraph also upheld the drawing of an adverse inference even when the United States government was a party to the action. Finally, the decision as to whether to grant immunity under 18 U.S.C. §§ 6002, 6003 is within the discretion of the executive branch and may not be second-guessed or interfered with by the court. *E.g., Snelling v. United States,* 719 F.2d 1067, 1068 n. 3 (10th Cir.1983); *United States v. D'Apice,* 664 F.2d 75, 77 (5th Cir.1981); *United States v. Lenz,* 616 F.2d 960, 962 (6th Cir.), *cert. denied,* 447 U.S. 929, 100 S.Ct. 3028, 65 L.Ed.2d 1124 (1980); *In re Daley,* 549 F.2d 469, 479 (7th Cir.), *cert. denied,* 434 U.S. 829, 98 S.Ct. 110, 54 L.Ed.2d 89 (1977); *see also In re Corrugated Container Antitrust Litigation,* 644 F.2d 70, 78 n. 13 (2d Cir.1981). The Court therefore holds that an adverse inference may be drawn in this action if the defendants refuse to provide evidence on Fifth Amendment grounds even though the United States government is a party to the action.

■ The Court is mindful that an adverse inference drawn from the assertion

---

**31.** This argument is inconsistent with Spero's argument that, since this is in reality a criminal action, no adverse inference could be drawn from a defendant's invocation of his Fifth

Amendment privilege. If this were a criminal action, an immunity grant would protect the defendant from use of his testimony in this very action.

of the Fifth Amendment privilege in a civil proceeding may not be the sole basis for imposing liability upon a defendant. *Baxter v. Palmigiano*, 425 U.S. 308, 317–18, 96 S.Ct. 1551, 1557–58, 47 L.Ed.2d 810 (1976); *United States v. Ianniello*, 646 F.Supp. 1289, 1296 (S.D.N.Y.1986), *aff'd*, 824 F.2d 203 (2d Cir.1987). The Court therefore will require independent corroborative evidence of the matters to be inferred from a defendant's invocation of the Fifth Amendment privilege against self-incrimination before imposing liability. *See United States v. Local 560*, 780 F.2d 267, 292–93 n. 32 (3d Cir.1985), *cert. denied*, 476 U.S. 1140, 106 S.Ct. 2247, 90 L.Ed.2d 693 (1986).

### Receivers Pendente Lite

 The Amended Complaint requests that the Court appoint "one or more receivers, *pendente lite*, to oversee the operation of the businesses, buildings and properties known as" the 4th Street Cafe, 405 Myrtle Avenue, J & S Cake, Hudson Plaza Hotel, Newark Airport Motel, Belleville Motor Lodge, Big Apple Taxi Two–Way Radio Co., and Casa Bella Restaurant. The demand for appointment of a receiver is based on the Amended Complaint's first (1962(c) violations through the Bonanno Family Enterprise), fourth through eleventh (1962(a) divestiture) and thirteenth (1962(d) conspiracy) claims for relief.

The government requests that the powers and duties of the receivers include the following:

A. To the extent that legitimate business activities occur at the properties identified above, to carry on and supervise those activities without interruption;

B. To the extent that illegal activities occur at the properties identified above, to cease and prevent such ongoing activities;

C. To protect, preserve and prevent from waste or dissipation the assets of each such business;

D. To withhold and place into an interest-bearing escrow account any and all funds, salaries or benefits of whatever kind or description due or which become due to any individual named as a defendant herein;

E. To retain legal counsel and to employ accountants and experts to assist in the proper discharge of the aforesaid duties;

F. To expend the funds of the businesses for all expenses which are reasonable and necessary to execute the mandate of this court;

G. To apply to this court for such assistance as may be necessary and appropriate in order to carry out the mandate of this court.

Spero argues that the government's motion for the appointment of a receiver for Big Apple should be denied without a hearing because the government has not met its heavy evidentiary burden of demonstrating that the extraordinary remedy of receivership is necessary. *See, e.g., Donovan v. Bierwirth*, 680 F.2d 263, 276 (2d Cir.), *cert. denied*, 459 U.S. 1069, 103 S.Ct. 488, 74 L.Ed.2d 631 (1982); *Meineke Discount Muffler Shops, Inc. v. Noto*, 603 F.Supp. 443, 444–45 (E.D.N.Y.1985); *S.E.C. v. Republic National Life Insurance Co.*, 378 F.Supp. 430, 438 (S.D.N.Y.1974). The government's motion for preliminary injunctive relief and the appointment of a receiver, however, is not currently before the Court. The Court will determine whether the government has met its burden after the government has been given the opportunity to prove the need for appointing a receiver in submissions in support of its motion or at a preliminary injunction hearing.[32]

Spero also argues that appointment of a receiver for Big Apple would serve no conceivable purpose. There will be no need to preserve Big Apple's assets because, Spero argues, the government is only authorized to obtain an order requiring Spero to sell

---

**32.** While an evidentiary hearing is not always essential to decide a motion for a preliminary injunction or the appointment of a receiver, *United States v. Ianniello*, 824 F.2d 203, 207 (2d Cir.1987), the government has requested a hearing in this action and a hearing appears to be appropriate.

his interest in Big Apple with Spero retaining the proceeds of the sale. As discussed above, the equitable remedy of disgorgement is a possible remedy in this action which may give the government an interest in ensuring that the assets to be disgorged remain with Big Apple and are not transferred elsewhere. Preservation of assets is thus not irrelevant to the relief potentially available in this action.[33]

Spero argues that the allegations of extortion in paragraph 42 of the Amended Complaint are conclusory and are so intertwined with legitimate business activities that a receiver would either not be necessary to halt ongoing criminal activity or would unalterably prejudice Spero's interests and destroy the status quo. As discussed above, the government's extortion allegations concerning Big Apple are sufficient to withstand a motion to dismiss. Consideration of whether the government can prove that the facts underlying those allegations warrant the appointment of a receiver and such appointment's potential prejudicial effect on Spero must await the hearing on the government's motion for preliminary injunctive relief.

The United States Court of Appeals for the Second Circuit has upheld the appointment of a receiver in a civil RICO case to prevent a restaurant's continued skimming of profits. *United States v. Ianniello*, 824 F.2d 203 (2d Cir.1987). The fashioning of a receivership to meet the needs of a particular case is within the discretion of the trial court exercising its equitable powers under § 1964(a) and (b) of RICO. *Id.* at 208; *see also United States v. Local 560*, 780 F.2d 267, 296 n. 39 (3d Cir.1985) (affirming appointment of trustee for union in civil RICO action), *cert. denied*, 476 U.S. 1140, 106 S.Ct. 2247, 90 L.Ed.2d 693 (1986). The appointment of a receiver for Big Apple is thus relief to which the government may be entitled depending on its proof. Spero's motion to deny the government's request

for that relief without a hearing is denied. To the extent that other defendants have joined in Spero's motion in regard to other property and businesses potentially subject to receivership, those motions are also denied and the government will be given the opportunity to prove the need for a receivership.

*Rights of Third Parties*

█ Certain defendants have argued that they are not the owners, or are only part owners, of property sought to be divested and that the divestiture relief sought would deprive innocent third parties of their property interests. These arguments are premature since the relief granted in this action will depend upon the proof as to the defendants' wrongdoing, their investment of racketeering income, and their interest in the properties at issue. The Court notes, however, that 18 U.S.C. § 1964(a) specifically requires that the courts make "due provision for the rights of innocent persons" in fashioning equitable relief in RICO civil actions.

The government has represented to the Court that it has given notice of this action to the owners of record of the properties sought to be divested. Additional notice to parties who may have an interest in the affected properties may be appropriate at the time the government's request for relief is heard. Moreover, the government has stated it will not oppose any motions to intervene in the action by real parties in interest. The Court granted the application of Belleville Motor Lodge to intervene on November 19, 1987.

*"Forfeiture" of Rodini's Pension Benefits*

█ Rodini moves to strike the Amended Complaint's request for a preliminary injunction appointing a trustee to oversee the operation of Local 814 who would have the power:

of a receiver at least insofar as it is premised on a need to preserve assets. *See Donovan v. Bierwirth*, 680 F.2d 263, 276–77 (2d Cir.), *cert. denied*, 459 U.S. 1069, 103 S.Ct. 488, 74 L.Ed.2d 631 (1982).

---

**33.** Spero also maintains that he is willing to consent to an injunction against transferring any interest he may have in Big Apple. Such consent will be considered by the Court in deciding the government's motion and may well call for a denial of the motion for appointment

To withhold the payment of any and all funds, salaries or benefits of whatever kind or description from any claimant who may have defrauded or seeks to defraud Local 814 or any associated or affiliated Employee Benefit Funds or who otherwise has misappropriated or is about to misappropriate any assets thereof until the completion of the aforesaid accounting and the resolution of any claims instituted against any individual or entity by or on behalf of Local 814, or any associated or affiliated Employee Benefit Funds.

Rodini, a retired member of Local 814, maintains that his pension benefits may not be withheld or "forfeited" under the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001 *et seq.*

The Consent Judgment "so ordered" by the Court on October 8, 1987, appointing a trustee, authorizes the trustee:

To withold [sic] to the extent permitted by law the payment of any and all funds, salaries or benefits of whatever kind or description from any claimant who has defrauded or unlawfully misappropriated assets of or is defrauding or misappropriating assets of Local 814 or the Local 814 Funds until the completion of the aforesaid accounting and the resolution of any claims instituted against any individual or entity by or on behalf of Local 814 and the Local 814 Funds.

The Consent Judgment dismisses the action as against the Local 814 defendants, Ignatius Bracco, and Vito Gentile. The government has therefore substantially obtained the relief which Rodini challenges and is no longer pursuing the request for relief which Rodini moves to strike, making Rodini's motion moot.

The Court notes that the Consent Judgment only authorizes the trustee to withhold benefits "to the extent permitted by law." Rodini has not claimed that any of his benefits have actually been withheld. If and when the trustee does withhold such benefits, the Court will entertain any appropriate application which Rodini chooses to make.

### Monetary Damages

■■■ The Amended Complaint's second claim for relief entitled "18 U.S.C. § 1962(c)—Monetary Relief Against Bonanno Family Enterprise Members and Associates" alleges that certain defendants were involved in a scheme to rig moving contracts for federal government offices and that the United States was thereby injured in the amount of $307,500. The section of the demand for relief entitled "Monetary Relief" claims damages arising from the moving contracts in the amount of $307,500, trebled, together with costs and attorney's fees.

The government's claim for monetary relief purports to be based upon the second as well as the twelfth (Local 814 captive labor organization) and thirteenth (§ 1962(d) conspiracy) claims. The twelfth claim for relief contains no allegation of damage to the United States and the thirteenth claim alleges that the government has been injured in an amount in excess of $300,000 and "continues to be damaged and hurt by the illegal acts and patterns of racketeering activity as set forth throughout the instant complaint." As discussed above, the thirteenth claim for relief is being dismissed because it fails adequately to plead conspiracy.

The government's demand for monetary damages purports to be authorized by 18 U.S.C. § 1964(c) which provides:

(c) Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee.

The RICO definition of "person" states: "'person' includes any individual or entity capable of holding a legal or beneficial interest in property." 18 U.S.C. § 1961(3).

Massino argues that the United States government is not a RICO "person" and has no standing to sue for monetary damages under U.S.C. § 1964(c). The government responds that it is a "person" under § 1961(3), that it is suing for damages to

its own commercial interests and not as *parens patriae,* and that courts have held that state, county, or municipal governments or officials have standing to sue for damages under RICO. While the United States could be said to fall within the wording of the RICO definition of "person," the Court holds that RICO's legislative history and analogous Clayton Act case law indicate that the federal government does not have standing to sue for damages under 18 U.S.C. § 1964(c).

Research has revealed no decisions addressing whether the federal government may sue for monetary damages under RICO. As the Supreme Court has noted, however, "the civil action provision of RICO was patterned after the Clayton Act." *Agency Holding Corp. v. Malley–Duff & Associates,* —— U.S. ——, 107 S.Ct. 2759, 2764, 97 L.Ed.2d 121 (1987); *accord Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 489, 105 S.Ct. 3275, 3281, 87 L.Ed.2d 346 (1985).

Section 4 of the Clayton Act, 15 U.S.C. § 15, as originally enacted and as it existed at the time RICO was enacted, provided:

§ 15. Suits by persons injured; amount of recovery

Any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor in any district court of the United States in the district in which the defendant resides or is found or has an agent, without respect to the amount in controversy, and shall recover three-fold the damages by him sustained, and the cost of suit, including a reasonable attorney's fee.

The facial similarity between 18 U.S.C. § 1964(c) and 15 U.S.C. § 15 is obvious. The Court in *Agency Holding* further described the similarity of the § 1964(c) of RICO and Clayton Act treble damage provision as follows:

Both RICO and the Clayton Act are designed to remedy economic injury by providing for the recovery of treble damages, costs, and attorney's fees. Both statutes bring to bear the pressure of "private attorneys general" on a serious national problem for which public prosecutorial resources are deemed inadequate; the mechanism chosen to reach the objective in both the Clayton Act and RICO is the carrot of treble damages. Moreover, both statutes aim to compensate the same type of injury; each requires that a plaintiff show injury "in his business or property by reason of" a violation.

107 S.Ct. at 2764.

The reliance on the Clayton Act model is a leitmotif throughout RICO's legislative history. *Agency Holding,* 107 S.Ct. at 2764–65; *see, e.g.,* 116 Cong.Rec. 25191 (1970) (American Bar Association comments) (suggesting addition of provision authorizing private damage suits based upon the concept of section 4 of the Clayton Antitrust Act); 116 Cong.Rec. 35295 (1970) (remarks of Rep. Poff) ("private persons injured by reason of a violation of the title may recover treble damages in Federal courts—another example of the antitrust remedy being adapted for use against organized criminality").

In *United States v. Cooper Corp.,* 312 U.S. 600, 61 S.Ct. 742, 85 L.Ed. 1071 (1941), the Supreme Court held that the United States was not a "person" who could sue for treble damages under § 7 of the Sherman Act, the predecessor of § 4 of the Clayton Act. The Court noted that "[s]ince, in common usage, the term 'person' does not include the sovereign, statutes employing the phrase are ordinarily construed to exclude it," 312 U.S. at 604, 61 S.Ct. at 743, and that, had Congress intended to include the United States as a "person" under the statute, it would have done so expressly. *Id.* at 606, 61 S.Ct. at 744. Congress similarly could have expressly included the United States within the RICO definition of "person" but did not.

The Court in *Cooper Corp.* also emphasized that enforcement actions available under the Clayton Act were divided into two separate categories: "It seems evident that the Act envisaged two classes of actions,—those made available only to the Government, which are first provided in detail, and, in addition, a right of action for

treble damages granted to redress private injury." *Id.* at 608, 61 S.Ct. at 745.[34] The civil remedies provision of RICO, § 1964, is similarly divided into proceedings brought by the Attorney General and those brought by persons injured in their business or property.

Congress amended the Clayton Act in 1955 to add a section explicitly authorizing suits by the United States when it is injured in its business or property. 15 U.S.C. § 15a. Under that section, the United States is permitted to recover only actual and not treble damages.

The *Cooper Corp.* decision and the amendment of the Clayton Act to include 15 U.S.C. § 15a both preceded the enactment of RICO. Since the damage action provision of § 1964(c) was closely modelled on the Clayton Act, the Court can only conclude that Congress would have expressly authorized the United States to sue for damages to its business or property had Congress so intended.

Congress in fact considered including a provision in RICO which would have authorized the United States to bring RICO actions to recover actual damages for injury to its business or property. Representative Steiger, noting that "the Judiciary Committee version of [RICO] fails to provide not only the necessary procedural provisions but also two important substantive remedies included in the Clayton Act: compensatory damages to the United States when it is injured in its business or property, and equitable relief in suits brought by private citizens," 116 Cong.Rec. 35228 (1970), proposed an amendment to the pending RICO legislation similar to 15 U.S.C. § 15a. *See* 115 Cong.Rec. 6996 (1969) (Report of Antitrust Section of the American Bar Association); 116 Cong.Rec. 27739 (1970) (letter from Rep. Steiger concerning proposed amendment); 116 Cong.Rec. 35227 (1970) (remarks of Rep. Steiger); 116 Cong.Rec. 35346 (1970) (amendment offered by Rep. Steiger). The amendment suggested by Representative Steiger was withdrawn be-

cause it had not been considered by the Judiciary Committee, 116 Cong.Rec. 35346–47 (1970), and the statute as enacted did not include such a provision. *See Agency Holding,* 107 S.Ct. at 2766; *Sedima,* 473 U.S. at 487–88, 105 S.Ct. at 3280–81.

Again, in 1971, Senators McClellan and Hruska proposed a bill, S. 16, entitled the Civil Remedies for Victims of Racketeering Activity and Theft Act of 1972, which would have amended RICO to include a provision authorizing damage actions by the United States. 117 Cong.Rec. 268 (1971); 118 Cong.Rec. 29368–70 (1972) (text of S. 16 and remarks of Sen. Hruska). The Supreme Court has described this bill as follows:

> This proposed bill, however, was not focused on the addition of a statute of limitations. Instead, the purpose of the bill was to broaden even further the remedies available under RICO. *In particular, it would have authorized the United States itself to sue for damages* and to intervene in private damages actions, and it would have further permitted private actions for injunctive relief. Congress' failure to enact this proposal, therefore, cannot be read as a rejection of a uniform federal statute of limitations.

*Agency Holding,* 107 S.Ct. at 2766 (emphasis added). The Court therefore concludes that, under RICO as enacted and as it currently exists, the United States government does not have standing to sue for damages to its business or property.

The parties have not addressed the legislative history of RICO as it relates to this issue. Instead, the government argues that courts have allowed state, county, and municipal officials and governments to sue for damages under RICO. *See Illinois Department of Revenue v. Phillips,* 771 F.2d 312 (7th Cir.1985); *Alcorn County, Mississippi v. U.S. Interstate Supplies, Inc.,* 731 F.2d 1160 (5th Cir.1984); *Schacht v. Brown,* 711 F.2d 1343 (7th Cir.), *cert. denied sub nom. Arthur Andersen & Co. v.*

---

**34.** The Court also reviewed other sections of the Clayton Act as well as the legislative history of the Sherman and Clayton Acts which supported the conclusion that the federal government could not sue for damages.

*Schacht,* 464 U.S. 1002, 104 S.Ct. 508, 78 L.Ed.2d 698 (1983); *City of New York v. Joseph L. Balkan, Inc.,* 656 F.Supp. 536 (E.D.N.Y.1987); *County of Cook v. Lynch,* 620 F.Supp. 1256 (N.D.Ill.1985). *But see Michigan, Department of Treasury v. Fawaz,* 653 F.Supp. 141 (E.D.Mich.1986). The government also emphasizes that it is suing for damages to its own commercial interests and not in a representational or *parens patriae* capacity. *Cf. New York v. Seneci,* 817 F.2d 1015 (2d Cir.1987) (barring RICO suit by State as representative for specific individuals); *Illinois v. Life of Mid–America Insurance Co.,* 805 F.2d 763 (7th Cir.1986) (barring RICO suit brought by State in representational or *parens patriae* capacity).

These arguments ignore two important features of the Clayton Act analysis applicable to RICO actions. First, unlike the federal government, state governments were held by the Supreme Court to have standing to sue for treble damages for injury to their business or property interests under § 4 of the Clayton Act. *See Hawaii v. Standard Oil Co.,* 405 U.S. 251, 262, 92 S.Ct. 885, 891, 31 L.Ed.2d 184 (1972); *see also Georgia v. Pennsylvania Railroad Co.,* 324 U.S. 439, 447, 65 S.Ct. 716, 721, 89 L.Ed. 1051 (1945). Second, the government in *United States v. Cooper Corp.,* 312 U.S. 600, 61 S.Ct. 742, 85 L.Ed. 1071 (1941), was suing for injury to its own property rights, not as *parens patriae* or as a representative, but the Court nevertheless held the government lacked standing to bring an antitrust treble damage action. Thus the government's arguments in support of standing are to no avail.

Holding that the government lacks standing to bring a RICO treble damage action is consistent not only with RICO's legislative history but also with RICO's goals and statutory scheme. Treble damages are not necessary to encourage the government to bring actions against RICO violators but rather serve to encourage "private attorneys general." As stated by the Supreme Court in describing 15 U.S.C.

§ 15a, the enactment of which allowed the United States to sue for actual damages under the Clayton Act: "Congress reasoned that the United States, unlike a private party, needed no extraordinary incentive to bring antitrust suits." *Hawaii v. Standard Oil Co.,* 405 U.S. 251, 264–65 n. 15, 92 S.Ct. 885, 892 n. 15, 31 L.Ed.2d 184 (1972). The United States has other means at its disposal, including criminal prosecutions and actions for equitable relief, to enforce the RICO statute. The failure of Congress expressly to authorize RICO damage actions by the federal government leads this Court to hold that the government's claims, to the extent they seek monetary damages, must be dismissed.[35] As stated by the Court of Appeals for the Seventh Circuit in the similar context of Congress's failure to provide for *parens patriae* suits by state governments under RICO:

> Despite the existence of identical language in the RICO statute and despite its "reliance on the Clayton Act model" in enacting RICO, Congress has made no similar change in RICO. In the face of such congressional inaction, we must conclude that the maintenance of such an action was not intended by Congress.

*Illinois v. Life of Mid–America Insurance Co.,* 805 F.2d 763, 767 (7th Cir.1986) (footnote omitted).

The second claim for relief, which seeks only monetary damages is therefore dismissed as to all defendants. The twelfth and thirteenth claims are also dismissed to the extent that they seek monetary damages.

*Statute of Limitations*

▆▆▆▆ Massino and Riela argue that the government's claims are barred by the four year Clayton Act statute of limitations made applicable to private RICO actions for damages in *Agency Holding Corp. v. Malley–Duff & Associates,* —— U.S. ——, 107 S.Ct. 2759, 97 L.Ed.2d 121 (1987). The government responds by arguing that the doctrine of fraudulent concealment and the

---

**35.** In light of the dismissal of the government's damage claims, it is unnecessary to decide whether, as argued by Massino, *res judicata* bars the government's claim for monetary damages.

Clayton Act's tolling provision of 15 U.S.C. § 16(i) applicable by analogy serve to toll the statute of limitations for the government's monetary damage claims. The government also contends that the timeliness of the government's claims for equitable relief should not be assessed in terms of the statute of limitations but instead is governed by laches.

The timeliness of the monetary damage claims is not an issue because the government lacks standing to assert those claims. The only remaining RICO claims are for equitable relief such as injunctions and divestiture. The timeliness of an action for equitable relief not covered by a particular statute of limitations is generally governed by the doctrine of laches. *Russell v. Todd,* 309 U.S. 280, 287, 60 S.Ct. 527, 531, 84 L.Ed. 754 (1940); *Argus Inc. v. Eastman Kodak Co.,* 552 F.Supp. 589, 599–600 (S.D. N.Y.1982). The defense of laches, however, is not available as against the United States government. *United States v. Summerlin,* 310 U.S. 414, 416, 60 S.Ct. 1019, 1020, 84 L.Ed. 1283 (1940); *United States v. RePass,* 688 F.2d 154, 158 (2d Cir.1982); *see Guaranty Trust Co. v. United States,* 304 U.S. 126, 132, 58 S.Ct. 785, 788, 82 L.Ed. 1224 (1938). As stated in the Senate Report on the RICO statute: "[I]t should be noted that there is no general statute of limitations applicable to civil suits brought by the United States to enforce public policy, nor is the doctrine of laches applicable." Senate Report at 160.

In any event, of the defendants remaining in the case, Rastelli, Massino, Spero, Attanasio, Infanti, Marangello, James Vincent Bracco, and Rodini are all alleged to be involved in continuing acts of racketeering. Graziano is alleged to have been involved in the collection of an unlawful debt through December 7, 1983, less than four years before the filing of the Complaint on August 25, 1987. Therefore, none of the claims will be dismissed for untimeliness.[36]

*Forfeiture Under 18 U.S.C. § 1955(d)*

██ The instant proceeding is not only an *in personam* RICO action against the Bonanno Family and the individual defendants, but also an *in rem* forfeiture action against the buildings and property located at three addresses where the Bonanno Family allegedly conducts gambling operations. The fourteenth claim for relief sets forth the government's forfeiture claim pursuant to 18 U.S.C. § 1955(d). Defendant Massino, who claims with his wife to own one of the properties sought to be forfeited, has moved to dismiss the fourteenth claim for relief.

Massino argues that the fourteenth claim must be dismissed because the forfeiture provision of 18 U.S.C. § 1955(d) does not extend to real property. Section 1955(d) provides in part:

(d) Any property, including money, used in violation of the provisions of this section may be seized and forfeited to the United States. All provisions of law relating to the seizure, summary, and judicial forfeiture procedures, and condemnation of vessels, vehicles, merchandise, and baggage for violation of the customs laws; the disposition of such vessels, vehicles, merchandise, and baggage or the proceeds from such sale; the remission or mitigation of such forfeitures; and the compromise of claims and the award of compensation to informers in respect of such forfeitures shall apply to seizures and forfeitures incurred or alleged to have been incurred under the provisions of this section, insofar as applicable and not inconsistent with such provisions.

Research has revealed only four reported decisions addressing the issue of whether real property is subject to forfeiture under section 1955(d). The decisions are evenly divided. In two of the decisions, *United States v. Building & Property known as*

---

**36.** The Court thus need not address whether a cause of action in a RICO civil proceeding accrues for statute of limitations purposes according to the principles set forth in *United States v. Persico,* 832 F.2d 705 (2d Cir.1987) (RICO criminal proceeding) or those set forth in *Zenith*

*Radio Corp. v. Hazeltine Research, Inc.,* 401 U.S. 321, 91 S.Ct. 795, 28 L.Ed.2d 77 (1971) (civil antitrust action). *See Agency Holding Corp. v. Malley–Duff & Associates,* 107 S.Ct. at 2767 (declining to address "appropriate time of accrual for a RICO claim").

*123–125 East Twelfth Street, Erie, Pennsylvania,* 527 F.Supp. 1167 (W.D.Pa.1981), and *DiGiacomo v. United States,* 346 F.Supp. 1009 (D.Del.1972), the courts held that real property is not forfeitable under § 1955(d), reasoning that Congress would have expressly included real property in § 1955(d) had it intended real property to be covered, that seizures under admiralty and customs procedures made applicable to § 1955(d) forfeitures always involve personal, not real, property, that the only instances in which forfeitures of real property have been approved have been under statutes expressly authorizing forfeiture of real property, and, finally, that "the problem of disposing of various interests in real property presents many complications." *DiGiacomo,* 346 F.Supp. at 1012.

The two decisions holding that real property is forfeitable under § 1955(d), *United States v. Premises & Real Property at 614 Portland Avenue,* 670 F.Supp. 475 (W.D.N.Y.1987), and *United States v. Various Denominations of Currency & Coin Totaling $4,280.45,* 628 F.Supp. 4 (S.D.W.Va. 1984), rejected the reasoning of *DiGiacomo* and *123–125 East Twelfth Street.* The Court finds the *614 Portland Avenue* and *Various Denominations* decisions persuasive and holds that real property is subject to forfeiture under § 1955(d).

First, as noted by the district courts for the Western District of New York and the Southern District of West Virginia, the language of the statute, "any property," is unambiguous and on its face includes both real and personal property. As stated by the Supreme Court, "If the statutory language is unambiguous, in the absence of 'a clearly expressed legislative intent to the contrary, that language must ordinarily be regarded as conclusive.'" *United States v. Turkette,* 452 U.S. 576, 580, 101 S.Ct. 2524, 2527, 69 L.Ed.2d 246 (1981) (quoting *Consumer Product Safety Comm'n v. GTE Sylvania, Inc.,* 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980)). *See 614 Portland Avenue,* 670 F.Supp. at 478; *Various Denominations,* 628 F.Supp. at 5. The phrase "including money" does not serve to exclude all other types of property, and, "if Congress did not want

§ 1955 to apply to particular kinds of property, it would have specifically excluded them." *Various Denominations,* 628 F.Supp. at 6; *614 Portland Avenue,* 670 F.Supp. at 477.

Second, the fact that seizures under admiralty and customs procedures by their nature involve personal and not real property does not mean that application of those procedures to forfeitures for gambling offenses makes forfeiture of real property unavailable. Gambling offenses, unlike violations of customs and admiralty laws, may often involve the use of real property, and forfeiture of that property under § 1955(d) would further the Congressional intent underlying the Organized Crime Control Act of 1970. *614 Portland Avenue,* 670 F.Supp. at 478 ("Were the statute limited to the seizure of roulette wheels, slot machines, gaming tables, as claimants contend, the intent of Congress would be frustrated in all cases, such as this, where the illegal gambling activities were limited to card games").

Third, *DiGiacomo*'s statement that forfeitures of real property have only been approved under statutes expressly authorizing forfeitures of real property is no longer accurate in light of various decisions under RICO and the Continuing Criminal Enterprise (CCE) statute, 21 U.S.C. § 848, which permitted forfeiture of real property even though RICO and CCE did not expressly authorize it. *United States v. Godoy,* 678 F.2d 84, 86–87 (9th Cir.1982), *cert. denied,* 464 U.S. 959, 104 S.Ct. 390, 78 L.Ed.2d 334 (1983) (RICO); *United States v. Tunnell,* 667 F.2d 1182 (5th Cir.1982) (RICO); *United States v. Mannino,* 635 F.2d 110 (2d Cir.1980) (CCE); *United States v. Grammatikos,* 633 F.2d 1013 (2d Cir.1980) (CCE). *See 614 Portland Avenue,* 670 F.Supp. at 478; *Various Denominations,* 628 F.Supp. at 6. The fact that amendments in 1984 to RICO and the CCE specifically included real property within the property forfeitable under those statutes while no corresponding amendment was made to § 1955(d) does not indicate that Congress intended to exclude real property under § 1955(d). The references

to real property in the RICO and CCE amendments merely codified existing case law as to the forfeitability of real property under RICO and CCE in the context of the extensive amendments contained in 18 U.S.C. § 1963 and 21 U.S.C. § 853.[37] Section 1955(d) was not amended at all in 1984.

Finally, the fact that more than one person may have interests in real property subject to forfeiture does not make forfeiture unavailable. Forfeiture proceedings pursuant to § 1955(d) are *in rem* rather than *in personam* proceedings.[38] In the instant case, the government has filed the action against the three properties where the alleged gambling activities took place. *In rem* forfeitures may reach the property interests of third parties who are not active wrongdoers. *Calero–Toledo v. Pearson Yacht Leasing Co.*, 416 U.S. 663, 683, 94 S.Ct. 2080, 2091, 40 L.Ed.2d 452 (1974) ("the innocence of the owner of property subject to forfeiture has almost uniformly been rejected as a defense"). Section 1955(d) nevertheless does not make forfeiture mandatory but instead provides that "[a]ny property … *may* be seized and forfeited" (emphasis added). The court in *Various Denominations* found that this language provides some leeway in the fashioning of § 1955(d) forfeiture decrees to take into account the rights of third parties. 628 F.Supp. at 8. Forfeiture of real property could be refused if the affected party establishes that "he was uninvolved and unaware of the wrongful activity, but also that he had done all that reasonably could be expected to prevent the proscribed use of his property." *Calero–Toledo v. Pearson Yacht Leasing Co.*, 416 U.S. 663, 689, 94 S.Ct. 2080, 2095, 40 L.Ed.2d 452 (1974); *Various Denominations*, 628

F.Supp. at 8. Moreover, as the court in *Various Denominations* noted:

Additionally, it would appear appropriate to decline forfeiture where only a minor portion of the property was used for gambling, or the forfeiture, taking into account its effect on the interests of third persons, would effect a disproportionate penalty or fail to effect the purposes of forfeiture.

628 F.Supp. at 8. *See 614 Portland Avenue*, 670 F.Supp. at 479 ("claimants may request remission or mitigation of forfeiture either administratively, to the Secretary of the Treasury, pursuant to 19 U.S.C. § 1618, or address such a request to the discretion of this Court in the context of these proceedings"). *See also United States v. One Tintoretto Painting*, 691 F.2d 603, 608 (2d Cir.1982).

Massino argues that one of the properties sought to be forfeited, 58–23 58th Road, Queens, New York, includes two parcels, one owned by Mr. and Mrs. Massino as tenants by the entirety and one owned by Mrs. Massino. Any arguments which Mr. and Mrs. Massino wish to raise as to Mrs. Massino's interest in the property will be entertained by the Court in the hearing on the § 1955(d) forfeiture.

Massino's challenges to the § 1955(d) forfeiture sought by the government therefore do not constitute grounds for dismissing the fourteenth claim for relief.

## CONCLUSION

Defendants' motions are granted in the following respects:

The Amended Complaint is dismissed in its entirety as to The Bonanno Organized Crime Family of La Cosa Nostra, Joseph

---

**37.** The House and Senate Reports accompanying the amendments recognized that real property was already forfeitable under RICO, 18 U.S.C. § 1963, and CCE, 21 U.S.C. § 848, and intended the amended 21 U.S.C. § 881 to extend forfeitures previously available under 21 U.S.C. § 881 also to include real property. H.R.Rep. No. 1030, S.Rep. No. 225, 98th Cong. 2d Sess. 192, 195 & n. 19, 198, 211 *reprinted in* 1984 U.S.Code Cong. & Admin.News 3182, 3375, 3378 & n. 19, 3381, 3394.

**38.** Contrary to Massino's argument that a criminal conviction is a prerequisite to § 1955(d) forfeiture proceedings, *in rem* civil forfeiture proceedings such as those brought under § 1955(d) do not require any underlying criminal conviction. *614 Portland Avenue*, 670 F.Supp. at 479; *see United States v. One Assortment of 89 Firearms*, 465 U.S. 354, 361, 104 S.Ct. 1099, 1104, 79 L.Ed.2d 361 (1984); *Calero–Toledo v. Pearson Yacht Leasing Co.*, 416 U.S. 663, 683–88, 94 S.Ct. 2080, 2091–94, 40 L.Ed.2d 452 (1974).

Bonanno, Alfred Embarrato, Frank Lino, Anthony Riela, and Benjamin Ruggiero.

The second, eleventh, and thirteenth claims for relief are dismissed as against Philip Rastelli and Joseph Massino.

The second, third, and eleventh through thirteenth claims for relief are dismissed as against Anthony Spero.

The second, third, fifth, and eleventh through thirteenth claims for relief are dismissed as against Louis Attanasio.

The second, third, and seventh through thirteenth claims for relief are dismissed as against Gabriel Infanti.

The second, fourth through eleventh, and thirteenth claims for relief are dismissed as against Nicholas Marangello, James Vincent Bracco, and William Rodini.

The second through thirteenth claims for relief are dismissed as against Anthony Graziano.

All claims dismissed are dismissed without prejudice except that, to the extent that any claim seeks monetary damages or purports to assert a claim against the Bonanno Family, it is dismissed with prejudice.

The allegations of paragraph 27 of the Amended Complaint and Exhibit B are stricken under Rule 12(f), Fed.R.Civ.P.

Massino's motion for a more definite statement under Rule 12(e), Fed.R.Civ.P., is granted with respect to the allegations of paragraph 28.

The government is granted thirty days from the date of this order in which to file a second amended complaint.

The original Complaint is dismissed as against Michael Sabella. The government's motion for leave to serve Sabella with the Amended Complaint is denied. The government is granted thirty days from the date of this order in which to file an amended complaint against Sabella in conformance with this Memorandum and Order.

The stay of discovery in this action is hereby lifted as to those defendants remaining in the action. The Magistrate is requested to confer with the parties at the earliest practicable date to fix discovery deadlines which should be as short as possible consistent with the need to prepare adequately for the preliminary injunction hearing. It is the Court's intention to commence such hearing immediately upon the completion of discovery.

SO ORDERED.

## APPENDIX

### Relevant Sections of the Racketeer Influenced and Corrupt Organizations Statute

*18 U.S.C. § 1961:*

§ 1961. Definitions

As used in this chapter—

(1) "racketeering activity" means (A) any act or threat involving murder, kidnaping, gambling, arson, robbery, bribery, extortion, dealing in obscene matter, or dealing in narcotic or other dangerous drugs, which is chargeable under State law and punishable by imprisonment for more than one year; (B) any act which is indictable under any of the following provisions of title 18, United States Code: Section 201 (relating to bribery), title 18, United States Code: Section 201 (relating to bribery), section 224 (relating to sports bribery), sections 471, 472, and 473 (relating to counterfeiting), section 659 (relating to theft from interstate shipment) if the act indictable under section 659 is felonious, section 664 (relating to embezzlement from pension and welfare funds), sections 891–894 (relating to extortionate credit transactions), section 1084 (relating to the transmission of gambling information), section 1341 (relating to mail fraud), section 1343 (relating to wire fraud), sections 1461–1465 (relating to obscene matter), section 1503 (relating to obstruction of justice), section 1510 (relating to obstruction of criminal investigations), section 1511 (relating to the obstruction of State or local law enforcement), section 1512 (relating to tampering with a witness, victim, or an informant), section 1513 (relating to retaliating against a witness, victim, or an informant), section 1951 (relating to interference with commerce, robbery, or extortion), section 1952 (relating to racketeering), section 1953 (relating

to interstate transportation of wagering paraphernalia), section 1954 (relating to unlawful welfare fund payments), section 1955 (relating to the prohibition of illegal gambling businesses), section 1956 (relating to the laundering of monetary instruments), section 1957 (relating to engaging in monetary transactions in property derived from specified unlawful activity), sections 2312 and 2313 (relating to interstate transportation of stolen motor vehicles), sections 2314 and 2315 (relating to interstate transportation of stolen property), section 2320 (relating to trafficking in certain motor vehicles or motor vehicle parts), sections 2341–2346 (relating to trafficking in contraband cigarettes), sections 2421–24 (relating to white slave traffic), (C) any act which is indictable under title 29, United States Code, section 186 (dealing with restrictions on payments and loans to labor organizations) or section 501(c) (relating to embezzlement from union funds), (D) any offense involving fraud connected with a case under title 11, fraud in the sale of securities, or the felonious manufacture, importation, receiving, concealment, buying, selling, or otherwise dealing in narcotic or other dangerous drugs, punishable under any law of the United States, or (E) any act which is indictable under the Currency and Foreign Transactions Reporting Act;

 \* \* \*

(3) "person" includes any individual or entity capable of holding a legal or beneficial interest in property;

(4) "enterprise" includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity;

(5) "pattern of racketeering activity" requires at least two acts of racketeering activity, one of which occurred after the effective date of this chapter and the last of which occurred within ten years (excluding any period of imprisonment) after the commission of a prior act of racketeering activity;

(6) "unlawful debt" means a debt (A) incurred or contracted in gambling activity which was in violation of the law of the United States, a State or political subdivision thereof, or which is unenforceable under State or Federal law in whole or in part as to principal or interest because of the laws relating to usury, and (B) which was incurred in connection with the business of gambling in violation of the law of the United States, a State or political subdivision thereof, or the business of lending money or a thing of value at a rate usurious under State or Federal law, where the usurious rate is at least twice the enforceable rate;

 \* \* \*

*18 U.S.C. § 1962:*

§ 1962. Prohibited activities

(a) It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity or through collection of an unlawful debt in which such person has participated as a principal within the meaning of section 2, title 18, United States Code, to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce. . . .

 \* \* \*

(c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

(d) It shall be unlawful for any person to conspire to violate any of the provisions of subsections (a), (b), or (c) of this section.

*18 U.S.C. § 1964:*

§ 1964. Civil remedies

(a) The district courts of the United States shall have jurisdiction to prevent and restrain violations of section 1962 of this chapter by issuing appropriate orders, including, but not limited to: ordering any person to divest himself of any interest, direct or indirect, in any enterprise; imposing reasonable restrictions on the future activities or investments of any person, including, but not limited to, prohibiting any person from engaging in the same type of

endeavor as the enterprise engaged in, the activities of which affect interstate or foreign commerce; or ordering dissolution or reorganization of any enterprise, making due provision for the rights of innocent persons.

(b) The Attorney General may institute proceedings under this section. Pending final determination thereof, the court may at any time enter such restraining orders or prohibitions, or take such other actions, including the acceptance of satisfactory performance bonds, as it shall deem proper.

(c) Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee.

(d) A final judgment or decree rendered in favor of the United States in any criminal proceeding brought by the United States under this chapter shall estop the defendant from denying the essential allegations of the criminal offense in any subsequent civil proceeding brought by the United States.